REYNOLDS VS UNITED STATES.

Opinion rendered June 14, 1907.

(103 S. W. Rep. 762).

1. *Indictment—Adultery—Sufficiency.*

   After alleging that the woman was single and the man a married man at the time the offense was committed, an indictment for adultery sufficiently charged a felonious act when it alleged that defendant "did unlawfully and feloniously commit the crime of adultery by having sexual intercourse with her."

2. *Selection of Grand Jury.*

   Mansfield's Digest provides that Circuit Courts shall select jury commissioners and that these commissioners shall select persons to serve on the grand jury. It further provides that should either the circuit or commissioners selected by them fail in their duty, the court shall order the sheriff to summon a grand jury which shall have and perform the same duties as though regularly selected. This method however must not be resorted to merely because the court prefer it, but because of some mistake or inadvertence in the action of the Circuit Court or commissioners.

3. *Motion to Quash Indictment—Proof Necessary.*

   Where a motion to quash an indictment because grand jurors were not selected by the jury commissioners as required by law but by the sheriff by order of the court and was sustained by no other proof excepting an affidavit charging that the court usurped its power, the motion was properly overruled.

4. *Adultery—Sufficiency of Evidence.*

   It is held that evidence on a trial for adultery, coupled with the fact that the defendant made no request for instruction on that ground shows that at the time of the commission of the offense the defendant was married.

**5.** *Determination of Punishment by Jury.*

It is prejudicial error to fail on defendant's request on a trial for adultery to instruct the jury to determine the punishment for Mansfield's Digest of Statutes c. 46 provides that on rendering a verdict of guilty the jury shall fix the punishment if it is not already determined by law.

Error to the United States Court for the Western District of the Indian Territory before Justice Sulzbacher, February 13, 1905.

Wm. B. Reynolds was convicted of adultry and brings error. Reversed and remanded.

J. S. Crump, for plaintiff in error.

CLAYTON, J. The plaintiff in error was indicted upon a charge of adultery. Upon arraignment, a plea of not guilty was entered, and without any withdrawal of the plea, or motion to be permitted to do so, a demurrer to the indictment, followed by a motion to quash, were filed. Both were overruled by the court and exceptions duly taken. A trial to a jury was then had, resulting in a verdict of guilty. After verdict, motions for new trial and in arrest of judgment were filed. Both were overruled, and exceptions saved. There were also numerous exceptions saved to the evidence, which will be noticed hereafter. The court, over the objection of the defendant, instructed the jury that, if they should find the defendant guilty, they were not to assess the punishment, but that the verdict should be guilty, or not guilty. The case is regularly here on writ of error.

In the assignment of errors, there are 15 specifications, not, however, in the order in which they are stated here. The first, third, fourth, and fifth are the usual specifications: That the court erred in not granting the defendant a new trial, that the verdict was contrary to the law, that it was contrary to

the evidence, and that it was contrary to both the law and the evidence—all of which will be disposed of in passing upon other specifications. The ninth specification is: "That the court erred in overruling defendant's demurrer to the indictment." Counsel in their brief make but one objection to the sufficiency of the indictment on its face, to wit, that in charging the act which constituted the offense it does not allege that it was "feloniously" done. The indictment, after alleging the venue, the time of the commission of the offense, and that the defendant was a married man, and that the woman, naming her, with whom the offense was committed, was a single woman, and not wife of defendant, alleges that defendant "did unlawfully and feloniously commit the crime of adultery by then and there having sexual intercourse with her." We think that this sufficiently charges that the act was feloniously done. In the case of Dixon vs State, 29 Ark. 166, the court, in passing on an indictment for murder under our Criminal Code of Practice, held the indictment, which was as follows, good: "The grand jurors of Clark county, in the name and by the authority of the state of Arkansas, accuse Giles Dixon of the crime of murder in the first degree, committed as follows, to wit: The said Giles Dixon, in the county aforesaid, on the 29th day of December, A. D. 1873, did willfully, feloniously, of his malice afore thought, with premeditation, by lying in wait, kill and murder one Nathaniel Y. McCall, then and there being, by shooting him, the said Nathaniel Y. McCall, with a certain gun, which he, the said Giles Dixon, in his hands," etc.

The tenth specification of error is: "The court erred in overruling defendant's motion to quash the indictment." The motion to quash is as follows: "(1) The indictment does not state facts sufficient to give the court jurisdiction of the offense charged. (2) The grand jury which returned the indictment herein was not selected by jury commissioners

as required by law. That there was no reason why jury commissioners were not appointed to select said grand jury except that the court preferred to have the jury selected and summoned by the marshal instead of jury commissioners." The only question raised by this motion is that the grand jury which found the indictment was improperly selected. We take it that the meaning of the motion is that the court, presided over at the time by Judge Raymond, intentionally failed to select and have summoned a jury commission to select this grand jury as provided by the statute, but, instead, for the sole reason that it was preferable to the court, it was selected by the marshal. The only method for the selection of persons who shall be competent to serve as grand and petit jurors in our courts is set out in sections 3976 to 3984, inclusive of Mansfield's Digest of Statutes, as follows:

"Sec. 3976. Jurors in both civil and criminal cases shall be selected as follows: The Circuit Courts at their several terms shall select three jury commissioners possessing qualifications prescribed for petit jurymen, who have no suits in court requiring the intervention of a jury.

"Sec. 3977. The same person cannot act as a jury commissioner more than once in the same year.

"Sec. 3978. The judge shall administer to the commissioners the following oath:   *    *    *    *

"Sec. 3979. If any person appointed a jury commissioner shall fail or refuse to attend and perform the duties required without a reasonable excuse, he shall forfeit and pay twenty-five dollars.

"Sec. 3980. The jury commissioners, after they have been organized and sworn, shall retire to a jury room or some other apartment designated by the judge.

"Sec. 3981. They shall be kept free from the intrusion of any person and shall not separate without leave of the court until they shall have completed the duties required of them.

"Sec. 3982. They shall select from the electors of the county sixteen persons of good character, of approved integrity, sound judgment and reasonable information, to serve at the next term of the court as grand jurors, and, when ordered by the court, shall select such other number as the court may direct, not to exceed nine electors, having the same qualifications, for alternate grand jurors, and make separate lists of the same, specifying in one list the names of the sixteen persons selected as grand jurors, and certify the same as the list of grand jurors; and specifying in the other list the names of the alternate grand jurors, and certifying the same as the list of alternates; said grand and alternate grand jurors shall be selected from all parts of the county.

"Sec. 3983. The two lists shall be enclosed and sealed, so that the contents cannot be seen, and indorsed 'list of grand jurors,' designating for what term of the court they are to serve; which endorsement shall be signed by the commissioners, and the same shall be delivered to the judge in open court.

"Sec. 3984. The commissioners shall also select from the electors of said county such number as the court may direct, not exceeding twenty-four persons, having the qualifications prescribed in section 3982 to serve as petit jurors; and when so ordered by the court, shall select such other number as the court may direct, not to exceed twelve electors having the same qualifications, for alternate petit jurors." * * *

"Section 4003, however, provides that: "If for any cause the jury commissioners shall not be appointed, or shall fail to select a grand or petit jury, as provided in this chapter, or the panel selected shall be set aside, or the jury lists returned

into court shall be lost or destroyed, the court shall order the sheriff to summon a grand or petit jury of the proper number who shall attend and perform the duties thereof, respectively, as if they had been regularly selected."

The question is: Does the last section (4003) empower the court, in any event, and for no other reason than that it prefers it, to ignore and set aside the other provisions of the statute, and order the marshal to select and summon the jurors? We think not. It is our opinion that section 4003 is but a saving clause of the statute and was enacted for the sole purpose of preventing a slip of the terms for the want of jurors to perform the functions prescribed for them, arising from some inadvertence or mistake, and that it is the duty of the judge in all instances to select and organize his jury commissioners for the selection of jurors for the next term. But if, by some inadvertence, such as in the rush and worry of business the duty should be overlooked, or through some mistake the jury commission should not be appointed, the court may order the marshal to select and summon the jurors and legally proceed with the business of the court. If the court in construing the law, should mistakenly, and in good faith, come to the conclusion that the statute gave to him the power to adopt this latter method, we do not see why the mistake should not bring the case within the saving clause of section 4003, as well as any other. It is well known that the courts in this jurisdiction, as well as some others, are not entirely infallible; but are the terms of courts to be suspended, the constitutional right of men, charged with crime, to have a speedy trial, to be ignored, and urgent and important business of the public to be delayed, because of this fallibility of judges? Of course, if a judge, informed of the construction of the law which we now give to it, should willfully arrogate to himself the power of setting aside the method of selecting jurors for our courts prescribed

by the statute, and because in his opinion the method prescribed for the curing of mistakes was the better one, or for any other cause, should intentionally pursue that course, the jury summoned by his order by the marshal would be an illegal one. The motion does not state that in this case it was willfully done; but, if it did, there is another reason why it should have been overruled. It is because it is not supported by any sufficient proof of the facts it states. The thing complained of does not appear on the face of the record, and therefore demands proof, and the mere affidavit attached to a pleading charging usurpation of power by the courts is not sufficient. It must be accompanied by other proof. This was not done. Under the circumstances, we think the court did not err in overruling the motion to quash.

The second specification is that there is no evidence showing that the defendant was a married man at the time of the alleged adultery. If this be true, it is a fatal failure of proof. We have examined the record, and find that it is nowhere positively proven that at the time the defendant was a married man. But in the testimony of the woman with whom the adultery was alleged to have been committed, on cross-examination, in answer to the question, "Did you know before that time that he was a married man?" She replied, "Yes, sir; I met his wife the night I met him." And again, in one of the defendant's letters to her, dated "9-27-03," which was shown to be in his handwriting and nowhere disputed, he says: "My Sweet Little Girl: In answer to your very kind and affectionate letter just received, I will say there is more consolation to me in the fact that through all my troubles and trials that two of the most noble creatures on earth stays with me. If you had gone back on me, oh, what would I have done or what would have become of me, and what would have become of me had my dear wife gone back on me?" The facts that

the woman testified she saw the defendant's wife the night they met, and that the defendant in a letter afterward written speaks of his wife as if she were still living, taken together with the fact that no request was made by defendant's counsel for an instruction to the jury on that ground, is sufficient, we think, to sufficiently establish the marriage.

The fourteenth specification of error is that the court erred in refusing to allow the jury to assess the punishment. In the case of Taylor vs United States, 98 S. W. 123, this court, speaking through Chief Justice Gill, says: "Holding, as we do, that chapter 46 of Mansfield's Digest is in force, the law gives the defendant the right to demand that the jury affix the punishment except under the statutes in which it is provided that the punishment shall be fixed in the discretion of the court. Failure to instruct the jury of this right when requested by defendant is prejudicial error." In this case, while there was no request for such a charge, the court, over the objection of the defendant, to which exception was saved, instructed the jury that they were not to assess the punishment, and of course, this was equivalent of a request, and therefore prejudicial error, entitling the defendant to a new trial; and therefore this specification, together with the first, which alleges error in not sustaining the motion for new trial, the second, error for rendering judgment on the verdict, and, third, that the verdict was contrary to the evidence, are all well taken.

Inasmuch as there must be a new trial, we do not deem it necessary to notice the other specifications.

Reversed and remanded.

GILL, C. J., and TOWNSEND and LAWRENCE, JJ., concur.