WILLIAMS et al vs UNITED STATES.

Opinion delivered September 25, 1902.

1. *Criminal Law—Larceny—Evidence—Sufficiency.*

Evidence, on which conviction for larceny was had, fully stated and *Held* to be insufficient to warrant the verdict of guilty.

2. *Larceny—Prosecution and Punishment for Governed by Laws of Arkansas, not U. S. Laws, in Indian Territory.*

Congress, by Act of March 1, 1895, (28 Stat. 696) provided that the provisions of Mansfield's Digest in Chapetrs entitled Criminal Law and Criminal Procedure shall govern prosecutions for crime in Indian Territory, except where the laws of the United States have provided for the punishment of same offenses in which case the latter shall govern. Mansf. Dig. Sec. 1963 (Ind. Ter. Stat. Sec. 1306) provides that all public offenses (excepting certain classes), shall be prosecuted by indictment. Sec. 1022 Rev. Stat. U. S. provides that all crimes and offenses committed against the provisions of chapter 7, Rev. Stat. U. S. which are not infamous, may be prosecuted by indictment or information. And the statute title Crimes covers a long list of crimes including larceny. *Held,* that by the Act of March 1, 1895, Congress intended to and did put in force Chapters 45 and 46 of Mansfield's Digest, and such laws are exclusive, and as to larcenies of a general nature, Congress intended to adopt the definition and method of procedure provided for in said chapters of Mansfield's Digest.

3. *Larceny—An Infamous Crime—Prosecution must be by Indictment, not Information.*

Under Sec. 2859 Mansf. Dig., (Sec. 1974 Ind. Ter. Stat.) a conviction for larceny disqualifies a person from thereafter testifying as a competent witness, and hence in this jurisdiction the crime of larceny is an infamous crime. Sec. 1022 Rev. Stat. U. S. providing all crimes and offenses committed against the provisions of Chapter 7, Rev. Stat. U. S. title "Crimes," which are not infamous, may be prosecuted either by indictment or information, does not,

therefore, apply to the crime of larceny in the Indian Territory, and the method of procedure in prosecution for this crime is governed by Sec. 1963 Mansf. Dig. (Sec. 1306 Ind. Ter. Stat.) which requires all public offenses (excepting certain classes not covering larceny) to be prosecuted by indictment. A prosecution for larceny cannot, therefore, be based upon an information.

Appeal from the United States Court for the Central District.

WM. H. H. CLAYTON, Judge.

Charles Williams and another were convicted of larceny, and they appeal. Reversed.

R. G. Bulgin, Jr., for appellants.

J. H. Wilkins, U. S. Atty.

GILL, C. J. There seems to be no complete report of the evidence in the case, but in the bill of exceptions seems to be the substance of the testimony, which is as follows: "That, when the first witness for the government was called, the defendant objected to the introduction of any evidence under said information upon the ground that the information was not signed by the prosecuting attorney at the time of filing same, nor any other person authorized to sign informations, and was not signed at all until after the jury had been sworn in this cause, and the district attorney signed it after stating his case to the jury, and that it was not a valid information; which objection was overruled by the court, and exceptions saved by the defendant. That the evidence produced on behalf of the government was as follows: 'That on the night of the 26th day of October, 1901, Mr. J. F, Sutterfield, of Calvin, Indian Territory, who runs a general merchandise store, heard a noise at the back door of

his store, which sounded like some one trying to break the lock or pry open the door, and suddenly pulled it open, and saw two forms dart around the corner of the store; that he went for help, and he and two or three other men returned to the rear of his store and as it had rained slightly that day, they could see tracks, and followed them down to the water tank of the Choctaw, Oklahoma & Gulf Railroad, where these boys, Charles Williams and Harry Woods, the defendants in this cause, were arrested, or taken by the pursuing parties; that there were tracks similar to the ones made in the soft ground behind the store of J. F. Sutterfield in the rear of a drug store, and from the appearances seemed to indicate that the drug store was attempted to have been broken into,—to which testimony defendant objected. Objection overruled by the court, and exceptions saved. That one of the defendants in this cause was on top of the tank and the other was on the ground under the tank when taken. That one of the defendants—Harry Woods, the one on top of the tank—stated that he threw a pistol into the tank, and that they found about seven or eight cigars floating on the water in the tank. That the brand of cigars taken from the box car were 'Happy Bill,' and the parties who took the cigars off the person of the defendants called them 'Happy Bill' cigars, and they believed they were. That the number of cigars taken from off the person of defendants were in number about fifteen or twenty, and that the witnesses thought the cigars found in the tank were the same kind as those found on the defendants. The agent of the Choctaw, Oklahoma & Gulf Railroad at Calvin stated that he sealed the car which contained the articles defendants are charged with larceny of about three o'clock in the afternoon of Saturday, the 26th day of October, 1901, and did not discover, or did any one else discover, it had been broken into until the following Monday. That a blacksmith shop was broken into, and a file and cold chisel taken,—which testimony was objected to by defendants, which was overruled, and ex-

ceptions saved.   That the government then rested, and the defendants testified as   follows:   That they were on their way from Shawnee, to try to secure work on the M., K. & T. Ry. fencing gang, where one of them had formerly been employed, and were stealing their rides on freight trains, and as they got to Holdenville they were put off the train by a brakeman.   While in Holdenville, they won quite a number of cigars on a wheel of fortune.   That afternoon—which was Saturday, the 26th day of October, 1901—they got on a freight train, and rode as far as Calvin, where they were again put off, and as it grew dark they got into an empty box car to stay that night, or until another freight train came through.   That night, about eleven or twelve o'clock, one of the defendants was awakened by a train, and he woke the other, telling him to hurry so they could catch it; but on getting to the door of the car they saw the train was going west, and they wanted to go east.   One of the defendants then suggested that they go down the track a short distance to a water tank and get a drink, as they might not get a chance for another drink, after they were on the next train, for some time. The defendants then went down to the tank, and after one of them had been up on the tank and got a drink, and while the other was up on the top and getting a drink, the men came and took them.   While the second one was on the tank getting a drink, and as he leaned over the top of the tank some cigars, about four in number, fell out of his pocket into the tank, and these cigars were found by the men.   That he threw his gun into the tank when the men ran up to the tank for fear he might be arrested for carrying it.   That they had about ten cigars between them.   That they did not break into any box or take any article from any car.   The government then introduced the following testimony:   That one of the men in the pursuing party saw one of the defendants—Charles Williams—make a motion, which indicated that he was taking something out of his pockets and putting it behind his back.   That the defendant was then sitting

down, his back against the tank.  That he thought the defendant was hiding something, and he became suspicious, but, instead of looking then, he went off with the party, and when they had gone about one hundred and fifty yards from the tank he returned, and found some cigars where defendant had been sitting.  That one of the defendants,—Charles Williams,—besides having the cigars, also had two pistols on his person.  That on or about the 15th day of December, 1901, the defendants filed an application for witness, alleging that he was a material witness, without whom they could not safely go to trial, and by whom they could prove they won the cigars from a wheel of fortune in Holdenville, Indian Territory; whereas the government alleges that the cigars were stolen from a box car.  That the court refused to allow the application for witness."

An examination of this evidence does not in any way connect the defendants with the burglary of the car.  The only circumstances that appear against the defendants were that they had quite a number of cigars.  There is no evidence, except the belief of some of the witnesses, that they were "Happy Bill" cigars, and the further circumstance that some cigars were found at a point where one of the defendants was sitting.  The defendants explained their possession of these cigars, and they had asked the government to be allowed to subpoena witnesses to prove how they obtained the cigars.  There is no proof of ownership of the cigars that were found in their possession.  There is no proof that the cigars found in their possession were the property of any particular person, or taken against the consent of that person.  And we do not think that the verdict of the jury was warranted in this case on the evidence, and a new trial ought to have been granted upon this account alone; but there are a number of questions involved in this case that we deem necessary to examine and ought to decide.

The defendants moved the court below for an arrest of judgment,—First, because the defendants were tried for an

infamous crime, to wit, larceny, without any indictment having been first presented against them by a grand jury as required by law. The defendants had been regularly indicted for burglary before a grand jury, and were in court in answer to that indictment. The United States attorney, with the permission of the court, dismissed this indictment and then filed an information against these defendants, which information is as follows (caption omitted): "Information for Larceny. At the December term, A. D. 1901, of the United States Court in the Indian Territory, in and for the Central district thereof, in open court, leave being first had and obtained, comes J. H. Wilkins, attorney for said court, and informs the court that, as appears from a complaint, under oath, on file in this cause, one Charles Williams and one Harry Wood, who were not then and there members of any Indian nation, on the 15th day of October, A. D. 1901, in the Central district of the Indian Territory, aforesaid, unlawfully did steal, take, and carry away, without the knowledge and consent of R. L. Ware, the owner thereof, one box of cigars, worth three dollars, two pounds of candy, each of the value of twenty cents, and of the total value of three dollars and forty cents, with the unlawful intent on the part of them, the said Charles Williams and Harry Wood, to steal and purloin the same, and deprive the owner thereof: the said R. L. Ware not being then and there a member of any Indian nation, and not being then and there a member of the same Indian nation as the said Charles Williams and Harry Wood; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America. J. H. Wilkins, United States District Attorney." This information was neither signed nor sworn to, and the defendants were placed on trial. Upon objection to the introduction of testimony on this unsigned information the court permitted the United States attorney to sign the information, and proceeded with the trial, overruling the defendants' objection.

(15)

Congress, in Section 33 of the act of May 2, 1890 (26 Stat. 96; Ind. Ter. Ann. St. 1899, § 48), provided with reference to the procedure in criminal matters in the Territory, as follows: "That the provisions of chapter forty-five of the said General Laws of Arkansas, entitled 'Criminal Law,' except as to the crimes and misdemeanor mentioned in the provisos to this section, and the provisions of chapter forty-six of said General Laws of Arkansas, entitled 'Criminal Procedure,' as far as they are applicable, are hereby extended over and put in force in the Indian Territory, and jurisdiction to enforce said provisions is hereby conferred upon the United States court therein: provided, that in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses the laws of the United States shall govern as to such offenses." And in the act of March 1, 1895, in paragraph 3 of § 4 (28 Stat. 696; Ind. Ter. Ann. St. 1899, § 48), provided as follows: "The provisions of chapter forty-five of Mansfield's Digest of the General Laws of Arkansas, entitled 'Criminal Law,' except as to the crimes and misdemeanors mentioned in the proviso of this section, and chapter forty-six of said laws of Arkansas, contained in said Digest, entitled 'Criminal Procedure,' and chapter ninety-one of said General Laws, regulating the jurisdiction and procedure before justices of the peace in civil cases, be, and they are hereby, extended to and put in force in the Indian Territory; and the jurisdiction to enforce said provisions is hereby conferred upon the United States court in the Indian Territory: provided, that in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses the laws of the United States shall govern as to said offenses, except for the crime of larceny, the punishment for which shall be that prescribed by the laws of the State of Arkansas, any law in force in said Indian Territory to the contrary notwithstanding." The constitution of the State of Arkansas (§ 8) provides: "No person

shall be held to answer a crime charged unless on presentment or indictment of a grand jury, and except in cases of impeachment or cases such as the general assembly shall make cognizable by justices of the peace and courts of similar jurisdiction." And Mansf. Dig. § 1962 (Ind. Ter. Ann. St. 1899, § 1305), provides: "That persons charged with the commission of a public offense shall be liable to be immediately arrested and proceeded against in the manner hereinafter directed." Section 1963 (§ 1306) provides: "All public offenses may be prosecuted by indictment, except: First, offenses of public officers where a different mode of procedure is prescribed by law. Second, offenses exclusively within the jurisdiction of police or city courts. Third, offenses arising in militia of which a military court has exclusive jurisdiction." Section 1964 ( § 1307) provides: "Offenses within the jurisdiction of justice of the peace, or of a city or police court, may be prosecuted by a summons or warrant of arrest, in which shall be stated, in general terms, the offense charged to have been committed." It will thus be seen from the Code of Criminal Procedure, as laid down in Mansfield's Digest, that there are two methods of prosecuting offenses which are within the jurisdiction of a justice of the peace: First, the proceedings may be had in the justice's court, in which case the statute provides that they shall be prosecuted by a summons or warrant of arrest, in which shall be stated, in general terms, the offense charged to have been committed; or, second, they may be prosecuted by indictment of a grand jury. These are the only methods whereby a man may be prosecuted under the Code of Procedure of Arkansas, which is made the Code of Procedure for this jurisdiction, except in the special cases above mentioned. In the first case, if a party comes into the district court at all, he comes there by process of appeal, and the case is tried de novo upon the warrant or summons. There is no method provided in the law of Arkansas whereby a party may be originally charged with any offense upon an information.

If the authority to prosecute upon an information be lodged in the United States attorney in the Indian Territory, it must be in and by virtue of some statute of the United States, and it cannot be by virtue of a procedure under Mansfield's Digest. Section 1022, of the Revised Statutes of the United States provides as follows: "All crimes and offenses committed against the provisions of chapter seven, title 'Crimes', which are not infamous, may be prosecuted either by indictment or by information filed by a district attorney." The statute title "Crimes," c. 7, Rev. St. U. S. covers a long list of specific offenses against the revenue laws, post office laws, marine laws, and persons holding fiduciary relations with the United States, including larceny. But under the act of March 1, 1895, we are of opinion that congress intended to put in force, and did put in force, chapters 45 and 46 of the laws of Arkansas, contained in Mansfield's Digest (Ind. Ter. Ann. St. 1899, c. 19, 20.) entitled respectively, "Criminal Law" and "Criminal Procedure," and, except where the punishment is different as provided in the laws of the United States, and as provided in Mansfield's Digest in said chapter 45, said chapters 45 and 46 are exclusive of all other laws, except, of course, such laws as have since been put in force by Congress. And we are of further opinion that as to larcenies of a general nature Congress intended by said act to adopt the definition and method of procedure provided for in said chapters of Mansfield's Digest, and that the same are in full force and effect here.

Is larceny an infamous crime? Bouvier, under title of "Infamy," uses the following words: "Infamy is that state which is produced by the conviction of crime and the loss of honor, which renders the infamous person incompetent as a witness." Mansf. Dig. § 2859 (Ind. Ter. Ann. St. 1899, § 1974), provides: "The following persons shall be incompetent to testify: First: Persons convicted of a capital offense, or of perjury, subornation of perjury, burglary, robbery, larceny, receiving

stolen goods, forgery or counterfeiting, except by consent of the parties." In Hall vs Doyle, 35 Ark. 445, the Supreme Court of Arkansas, in passing upon the question, says: "The plaintiff was not a competent witness. He was disqualified by conviction for larceny. Although we must infer from the verdict and judgment that he was convicted of petit larceny, it is still larceny, and the statute makes no distinction in this respect." We are compelled by these statutes and the decisions thereunder to hold that larceny is an infamous crime. In its moral aspects the theft of a penny must be considered in the same light as the theft of a larger sum. The conviction of petit larceny carries with it, except as to the extent of punishment, the loss of privileges of citizenship entailed by conviction of grand larceny. Mansf. Dig. § 1627 (Ind. Ter. Ann. St. 1899, § 970), provides: "Whoever shall be guilty of larceny, when the value of the property stolen exceeds the sum of ten dollars, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than five years; and when the value of the property stolen does not exceed the sum of ten dollars, by imprisonment in the county prison not more than one year; and shall be fined in any sum not less than ten nor more than three hundred dollars." The infamy of the individual stealing $10 is the same as the infamy of the individual who steals $10.01; but the court in the one case must sentence the offender to the penitentiary and in the other case to the county jail, with a fine. But whether the value of the property stolen be $10 or less or more, the infamy of the crime renders the convicted felon incapable of jury service, of the right to testify, or to hold office. And certainly it cannot be held, under section 1022, that the United States attorney could, by information, prosecute the crime of larceny, whether the same be grand or petit larceny, by information; and we must, therefore, hold that the court was in error in pronouncing judgment upon the verdict of the jury in this trial, and the case is therefore ordered reversed and remanded, with directions to the court below to dismiss the action and proceed regularly therein.