UNITED STATES v. GREENE et al.

(District Court, S. D. Georgia, E. D.   January 13, 1906.)

Nos. 476, 477.

JURY—DISTRICT FOR SELECTION OF JURY—CHANGE OF BOUNDARY.

Where, after the commission of an alleged crime in a federal district, the division of the district in which it was committed is changed by the creation of a new division therefrom, the district as "previously ascertained by law," within the meaning of the sixth constitutional amendment, which constitutes the vicinage from which the jury must be drawn for the trial of the accused, comprises the division as it stood before the change.

On Special Pleas of Defendants and Demurrer Thereto.
See 115 Fed. 343.

Marion Erwin, U. S. Atty., Samuel B. Adams and Thomas F. Barr, Sp. Assts. to U. S. Atty., and Alexander Akerman, Asst. U. S. Atty.

Peter W. Meldrim, William W. Osborne, and Alexander A. Lawrence, for defendants.

SPEER, District Judge.   The question presented by the plea and demurrer has, in some respects, already been passed upon by the court in this case.   This appears from the opinion of the court filed February 17, 1902.   113 Fed. 683.   Additional features, however, appear by the plea and demurrer, but they do not appear to be difficult of determination.   The broad question involved depends upon the proper construction to be given article 6 of the amendments to the Constitution of the United States.   This was one of those great provisions of personal right which were exacted by the American people as a condition to the adoption of the Constitution itself.   It was proposed to the Legislatures of the several states by the first Congress on the 25th of September, 1779, and was ratified by a sufficient number of the states in that year and in the years immediately following.   It provides:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."

The term "previously ascertained by law" necessarily imports previously to the commission of the crime, or at least to the accusation. Now it will not be disputed that the offense charged against the pris-

oners, if offense it be, was committed before the creation of the Southwestern division of the Southern district of Georgia, with provision for courts at Valdosta. At that time the Eastern division of the district comprehended the counties from which the grand jurors who found the indictments under consideration were drawn. The district as it then stood was, therefore, the district as it had been previously ascertained by law. It follows that since a large number of counties have been, subsequently to the alleged commission of the offense, withdrawn from the Eastern division and comprehended in the Southwestern division, the Eastern division now at this time is not as it had been previously ascertained by law. It follows that this principle of our organic law, which is over and above all other laws, obliges the court to try the defendants in the district as it stood at the time the offense is alleged to have been committed. The obvious intention of the framers of the Constitution was to create a vicinage for the court from which jurors must be drawn. The vicinage was the late Eastern division of the Southern district of Georgia, but that vicinage had been impaired, as we have seen, by an act of Congress. Acts of Congress cannot impair the Constitution or its effect. It follows, therefore, that as to these prisoners the vicinage in which they are to be tried is the Eastern division of the Southern district of Georgia as it had been previously ascertained at the time the offense is alleged to have been committed. This being the law, the court, not on its own initiative, but, as it will appear from the record and otherwise, having been requested more than once by the district attorney for the exercise of this power in order to obtain an impartial jury, determined to cause the jurors to be selected from that portion of the district most remote from the scenes of the transactions involved in this controversy. The counties from which the jurors are selected are among the most thrifty, enlightened, and progressive in the state of Georgia. They are the counties of Lowndes, Thomas, Decatur, Berrien, and Brooks as they then existed. The court had long experience of the intelligence, capacity, uprightness, and patriotism of jurors taken from that section of the state. They had long composed a part of the jury body at many terms in the courts at Savannah. How, then, was this jury to be obtained? Since a new jury must be had, we could not select jurors from the small Eastern division we now have, because it had been prescribed by law, and the prisoners were entitled to be tried in the district as previously ascertained. The law, familiar to all, requires that the jurors shall be returned by commissioners. One of these must be the clerk of the court, and the other a prominent member of the principal political party opposing that to which the clerk belongs. The home of the clerk is Savannah, and since the court had determined to draw the jury from the extreme southwestern counties of the state, how necessary was it that the additional commissioner should be selected from a locality where residence had given him long acquaintance with the people, and who was otherwise by intelligence and character fitted for the selection of pure, impartial, upright, and intelligent men to perform the grave service to the public, and to the prisoners who were involved in this prosecution. It was not difficult to find such a

man. He was Hon. William S. West of Valdosta, whose very name, wherever he is known, is significant of quiet and manly courage, of devotion to duty, the possessor of the confidence of all the worthy who who know him, perhaps the leading citizen of his county, president of the Senate, and therefore ex officio Lieutenant Governor of Georgia. By such men was the jury selected. In his written argument one of the counsel for the accused this morning stated:

"Whether or not the appointment of Mr. West is to the prejudice of these defendants in this particular case he is not prepared to say."

The court, however, will say that the appointment of the commissioners and the jurors secured by him, the 500 jurors whose names are placed in the jury box by the commissioners, will in nothing be prejudicial to the prisoners unless the law and the evidence which may be submitted shall fully support such prejudicial action. These men will have an absolutely fair trial by fearless and impartial jurors, who will be guided by the evidence, by God, and by their consciences. No state in theAmerican Union can show a finer body of jurors than the men of whose method of selection they complain. Indeed, no state in the Union can exhibit a finer jury body than that which invariably responds to the summons of this court. The character of the jury body of the Southern district of Georgia has been a tower of strength to the presiding judge in more than two decades of judicial service among this people. This has been largely due to the character of the jury commissioners. The mention of their names in the locality where they are known will carry conviction to any one. Such men as John Screven, J. H. Estill, Julian Schley, John D. Harrell, Edward S. Elliott, and others who might be mentioned, have been jury commissioners in these courts. And, widely known and respected as are all of these gentlemen, none surpass that high-minded Georgian and patriot American, William S. West, who, co-operating with the clerk, the son of an ex-governor of Georgia, the illustrious Herschel V. Johnson, selected the jurors who found these bills of indictment, and from whom may be taken the jury which will pass upon their guilt or innocence.

The plea is idle. It is bad for duplicity. It is in the teeth of the Constitution and the law, and the demurrer will be sustained.