## JNO. W. SHARP V. STATE.

No. A-43.   Opinion Filed September 27, 1909.

(104 Pac. 71.)

**STATUTES—Trial—Procedure—What Law Governs.** A defendant charged with the commission of a crime is entitled to be tried and dealt with under the laws as they existed at the time of the alleged commission of the offense of which he stands charged, in all matters where such laws vouchsafe to him a substantial protection.

(Syllabus by the Court.)

*Error from District Court, Adair County; R. Y. Nance, Judge.*

John W. Sharp was convicted of manslaughter, and he brings error.   Reversed and remanded.

John W. Sharp, the plaintiff in error in this case, was indicted for the crime of murder by a grand jury in the United States court for the Northern district of the Indian Territory, the indictment being filed in open court on the presentment of the grand jury at Sallisaw, in the Northern district of the Indian Territory, on December 12, 1906, and accusing him of having committed the crime of murder within the Northern district of the Indian Territory

on the 28th day of November, A. D. 1906, by shooting and killing one William Powell. The case against the plaintiff in error, defendant below, was pending and undetermined in the United States court for the Northern district of the Indian Territory at the time the territory of Oklahoma and the Indian Territory were admitted into the Union as the state of Oklahoma. Under the Constitution of the state of Oklahoma and the enabling act the case was duly transferred and docketed in the district court of Cherokee county, state of Oklahoma, the crime having been alleged to have been committed within the town of Tahlequah, which said town is located within the geographical limits of what was the Northern district of the Indian Territory, and is now Cherokee county, state of Oklahoma. That on April 20, 1908, the said John W. Sharp filed his application for a change of venue in the district court of Cherokee county, state of Oklahoma, which said application was duly allowed, and said cause transferred for trial to the district court of Adair county, state of Oklahoma. That thereafter, and on the 8th day of May, 1908, the cause proceeded to trial, and the defendant was convicted of the crime of manslaughter, and, his motions for a new trial and in arrest of judgment having been overruled by the court, the defendant was on May 16, 1908, sentenced to be confined in the state penitentiary at Lansing for the term of 10 years, sentence to begin from said date, and that in addition to said sentence the defendant pay a fine of $500. The defendant prayed an appeal, and his bond was fixed at $5,000. The bond having been approved, the defendant was released pending appeal, and this case is now before this court for review upon petition in error and case-made.

Thomas H. Owen, being of counsel for the defendant in the trial of this cause below, was disqualified to sit in this case in this court, and, the fact having been duly certified to the Governor as provided for by law, Preston S. Davis, of Vinita, Okla., was duly commissioned by the Governor to sit in this case as special judge.

*Soper & Huckleberry, Thomas H. Owen,* and *Wm. M. Cravens,* for plaintiff in error.

· *Chas. West,* Atty. Gen., and *E. G. Spilman,* Asst. Atty. Gen., for the State.

No copies of briefs reached the reporter.

DAVIS, SPECIAL JUDGE (after stating the facts as above). This crime was alleged to have been committed prior to statehood, and the defendant charged with the crime of murder by indictment in the United States court for the Northern district of the Indian Territory, prior to statehood. The case did not come on for trial until after the territory of Oklahoma and the Indian Territory were admitted into the Union as the state of Oklahoma, and until after the Constitution of the state of Oklahoma had been adopted, and the act of Congress, approved March 4, 1907, c. 2911, 34 Stat. 1286, known as the "Enabling Act," had been passed. There are a number of questions raised and saved by the objections and exceptions of counsel for plaintiff in error, as disclosed by the record, the most important of which are: What law of procedure shall apply in the trial and decision of this case against the plaintiff in error, Shall the law of Arkansas, as adopted by Congress and put in force in the Indian Territory at the time of finding the indictment against plaintiff in error, apply, or shall the Constitution and laws of the state of Oklahoma and the laws of the territory of Oklahoma, as extended over the Indian Territory by act of Congress known as the "Enabling Act," apply?

In the case of *United States v. Haskell et al.* (Dist. Ct., E. D. Okla.) decided April 10, 1909, and found in 169 Fed. 449, this question was before the court on a motion to quash certain indictments found against the defendants therein, charging them with a conspiracy continuing to the date of the indictments and alleging that the last overt act that affected the objects of the conspiracy were committed by the accused at a date prior to the termination of the territorial government for the Indian Territory. In this case, Marshall, District Judge, in discussing the third ground of the motion to quash, which is as follows: "(3) The fact that the grand jury which returned the indictments consisted of 21 grand

jurors instead of 16, the number claimed to have been prescribed by law at the date of the offenses charged"—said:

"The third objection, going to the validity of the grand jury, is of more weight. The crimes charged are alleged to have been committed in the Indian Territory; that is to say, the several indictments are found under section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), and each charge a conspiracy continuing to the date of the indictment, but the last overt act, alleged to affect the object of the conspiracy, is of a date prior to the termination of the territorial government. The crime was then complete, and the defendants then became, if at all, liable to the penalty. At that time Congress had established United States courts in the Indian Territory, and had extended over and put in force there certain laws of the state of Arkansas, including section 3991 of Mansfield's Digest of the Laws of Arkansas, which reads:

" 'A grand jury of 16 persons shall be selected from those designated as grand jurors, but if any shall be absent, incompetent to serve, or excused, the deficit shall be made up by taking a sufficient number of competent alternates present in the order in which their names appear upon the list.'

·"This was the only statute regulating the number of grand jurors in the constitution of a grand jury which was in force in the Indian Territory at the date of the alleged crimes, unless section 808 of the Revised Statutes (U. S. Comp. St. 1901, p. 626) of the United States was applicable therein, a matter to be presently considered. Before the statutes of the state of Arkansas had been extended over the Indian Territory, it had been the subject of construction by the Supreme Court of that state in the case of *Harding v. State,* 22 Ark. 210, and it was there held that no grand jury consisting of more than 16 persons complied with its provisions, and that an indictment returned by a grand jury of 17 persons must be quashed. This construction of the statute must be assumed to have been known to the Congress of the United States, and it accompanied the statute when extended. The indictments here in question were each found by a grand jury consisting of 21 persons. After the commission of the offense and before any prosecution therefor, the Indian Territory had, together with the territory of Oklahoma, been admitted to the Union as the state of Oklahoma. United States Circuit and District Courts had been organized therein, and had been given jurisdiction of offenses theretofore committed in the respective territories so far as the same would have been within the jurisdiction of such courts if

committed within a state. The indictments were thereafter found in the United States District Court for the Eastern district of Oklahoma, and it is claimed that the grand jury in question was legally constituted under the provisions of section 808 of the Revised Statutes of the United States. That section provides, among other things, that every grand jury impaneled before any district or circuit court shall consist of not less than 16 nor more than 23 persons. It becomes important, then, to consider whether that section of the statute was applicable to the United States courts of the Indian Territory when the offenses were committed; or, if not, the effect as to the defendants of the subsequent legislation which transferred jurisdiction of the offenses charged to the United States District Court of the Eastern district of Oklahoma.

"Section 808 of the Revised Statutes was expressly limited to grand juries impaneled in a United States district or circuit court. The courts of the Indian Territory were courts of the United States, but not district or circuit courts of the United States within section 808. The dual jurisdiction exercised by the United States courts of the Indian Territory is beside the question. They did not fall within the discription of the courts named in section 808, and that section had no application within any territory of the United States. This was settled by the Supreme Court of the United States in *Reynolds v. United States,* 98 U. S. 145, 25 L. Ed. 244, and needs no elaboration. But, when these indictments were found, section 808 of the Revised Statutes applied by reason of legislation which took effect after the commission of the offenses charged. It authorized a grand jury consisting of not less than 16 nor more than 23 persons, and the grand jury in question was within the maximum limit prescribed. Was the subsequent legislation, which for the first time made this provision of the statutes applicable to the prosecution of the defendants, *ex post facto* as to them, and forbidden by section 9 of article 1 of the Constitution of the United States, so far as it authorized a grand jury consisting of more than 16 persons? It is evident that the change was of importance to the defendants. Neither before nor after statehood could they be held to answer the crime charged unless on a presentment or indictment of a grand jury; but, if sought to be indicted before statehood, five dissenting grand jurors of the entire number could have precluded the finding of an indictment, while after statehood, and as the grand jury was in fact constituted, it required not less than ten dissenting jurors to have

the same effect. That the situation was altered to the disadvantage of the defendants is apparent.

"But it is argued that this is mere matter of procedure, and that one accused of crime has no vested right in being prosecuted in accordance with the methods of procedure in force at the date of the offense. That must be granted as a general proposition; but it is so because a change of procedure ordinarily imposes no hardship on the accused, nor seriously alters his position to his disadvantage. In his Constitutional Limitations. p. 272, Judge Cooley says:

" 'The Legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime.'

"The following cases announce and illustrate the principle: *Kring v. Missouri,* 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506; *Duncan v. Missouri,* 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485; *Thompson v. Utah,* 170 U. S. 352, 18 Sup. Ct. 620, 42 L. Ed. 1061; *State of Utah v. Rock,* 20 Utah, 38, 57 Pac. 532. Here, though the change was one of procedure, 1 am of the opinion that a substantial protection, designed by the law for the benefit of the accused was, subsequent to the commission of the offenses, if not dispensed with, so impaired as to injuriously affect the rights of the accused, and alter the situation to their disadvantage, so that as to them it must be held to be *ex post facto.* \* \* \*

"It follows that the indictments will be quashed, but as a grand jury can be impaneled in this court, consisting of 16 persons, and yet complying with the requirements of section 808 of the Revised Statutes, the cases, if counsel for the government so desire, will be ordered to be submitted to another grand jury, and the defendants held to await the action of such grand jury."

In the case of *Crowley v. United States,* 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075, the Supreme Court of the United States, when the question was raised that a defect in the constitution of a grand jury is a defect or imperfection in matter of form only, and therefore cured by section 1025 of the Revised Statutes (U. S. Comp. St. 1901, p. 720), announced the following doctrine, to wit:

"That section can have no bearing in the present case, for the disqualification of a grand juror is prescribed by statute, and cannot be regarded as a mere defect or imperfection in form. It is matter of substance which cannot be disregarded without prejudice to an accused."

See, also, the case of *Carter v. Texas,* 177 U. S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839.

In the case of *State v. Caruthers,* 1 Okla. Cr. 428, 98 Pac. 474, in an opinion handed down November 19, 1908, Baker, Judge, speaking for this court, upon the same point under discussion here, among other things, said:

"Coming now to the second proposition: 'What law of procedure shall be applied in the determination of the rights of the relator?' We think the law in force in the Indian Territory from the time chapter 46 of Mansfield's Digest of the Laws of the state of Arkansas was adopted by Act. Cong. May 2, 1890, c. 182, 26 Stat. 81, and put in force in the Indian Territory, and continuing until Oklahoma was admitted into the Union, shall control. Within the meaning of the Constitution of the United States, any law is *ex post facto* which is enacted after the commission of the offense, and which, in relation to it or its consequences, in any way affects the material situation of the accused to his prejudice or disadvantage. This doctrine is most ably sustained in a very learned and exhaustive opinion written by one of the world's ablest jurists, Mr. Justice Miller, of the Supreme Court of the United States, and decided by that court in the case of *Kring v. Missouri,* 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506, a capital case, Kring having been indicted and convicted of murder in the first degree. The judgment was affirmed by the Supreme Court of Missouri, a previous sentence, however, having been pronounced against him on his plea of guilty of murder in the second degree, and subjecting him to imprisonment for 25 years, which sentence, on his plea, had been appealed, reversed, and set aside by said court. By the law of Missouri, in force when the homicide was committed, this sentence was, in effect, an acquittal of the crime of murder in a higher degree. Before his plea of guilty was entered, the law was changed so that by force of its provisions, if a judgment on that plea be lawfully set aside, it shall not be held to be an acquittal of the higher crime. Held that, as to this case, the new law was *ex post facto,* within the meaning of section 10, art. 1, of the Constitution of the United

States, and that he could not be again tried for murder in the first degree. This decision is entirely in accordance with our conception of justice and fairness. The accused should be tried and dealt with under the law as it existed at the time of the commission of the crime of which he stands charged. Any other doctrine would be fraught with many hardships and uncertainties, and would be repugnant to the well-established policy of the law.

"It was, by counsel in the Kring Case, urged that as to the rights of persons charged with crime under subsequent legislation affecting those rights, even though the changes in the law were radically to the disadvantage of the accused, it is not *ex post facto,* because it was a change, not in crimes, but in criminal procedure. This view the Supreme Court of the United States refused to accept, but proceeded to define the much vexed question as to what is meant by 'procedure' as a law term; and said court wisely adopted the definition laid down by the distinguished writer on criminal law, Joel Prentiss Bishop, in his valuable work on Criminal Procedure. Bishop, in the first chapter of his work, undertakes to define what is meant by 'procedure.' He says: 'Sec. 2. The term "procedure" is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice.' And in defining 'practice' in this sense, he says: 'The word means those legal rules which direct the course of proceeding to bring parties into the court, and the course of the court after they are brought in.' Evidence: 'Signifies those rules of law whereby we determine what testimony is to be admitted and what rejected in each case, and what is the weight to be given to the testimony admitted.' We think the court in the *Kring v. Missouri* case lays down a correct and clear idea of what is intended by the word 'procedure' as applied to a criminal case. It is, therefore, obvious that a law which is one of procedure may be decidedly obnoxious as an *ex post facto;* for any law which would alter the legal rules of evidence, or receive less, or different, testimony than the law requires at the time of the commission of the offense, or would apply different rules for the conduct of the trial of the case, is an *ex post facto* law. Many instances might be cited where a change of the law would not, in fact, change the crime or its punishment, but would still, in the application of the changed condition of the procedure, materially and prejudicially affect the rights of the accused. No *ex post facto* law will be enforced against the accused which would

in any way be prejudicial to his rights. We think that Congress, in passing the Enabling Act, intended to settle the question as to the law applicable in cases then pending in the Indian Territory. Section 20 of the Enabling Act provides (Act March 4, 1907, c. 2911, 34 Stat. 1287). 'All criminal cases pending in the United States Courts in the Indian Territory not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be prosecuted to final determination in the state courts of Oklahoma under the laws now in force in that territory.' This court, therefore, holds that the law in force in the Indian Territory at the time the indictments were returned in the cases against the relator shall govern the disposition of his cases."

At the time this crime is alleged to have been committed, and the time the defendant, John W. Sharp, was indicted in the United States court for the Northern district of the Indian Territory, the territory, under acts of Congress, had been divided into four judicial acts, namely, Northern, Western, Central, and Southern; and United States courts had been established in each district with jurisdiction to try all offenses against the penal laws put in force in said Indian Territory by the various acts of Congress. By the act of Congress approved May 2, 1890, c. 182, 26 Stat. 81, entitled, "An act to provide a temporary government for the territory of Oklahoma, and to enlarge the jurisdiction of the United States courts in the Indian Territory, and for other purposes," it was provided, under section 31 of said act, that:

"The Constitution of the United States and all general laws of the United States which prohibit crimes and misdemeanors in any place within the sole and exclusive jurisdiction of the United States, except in the District of Columbia, and all laws relating to national banking associations, shall have the same force and effect in the Indian Territory as elsewhere in the United States. * * * *"

And section 32 of said act provided as follows:

"That the word 'county,' as used in any laws of Arkansas which are put in force in the Indian Territory by the provisions of this act, shall be construed to embrace the territory within the limits of a judicial division in said Indian Territory; and whenever in said laws of Arkansas the word 'county' is used, the words 'judicial division' may be substituted therefor, in said Indian Territory, for the purpose of this act. And whenever in said laws

of Arkansas the word 'state' or the words 'state of Arkansas' are used, the word 'territory' or the words 'Indian Territory' may be substituted therefor, for the purposes of this act, and for the purpose of making said laws of Arkansas applicable to the said Indian Territory; but all prosecutions therein shall run in the name of the 'United States.' "

Under section 33 of said act it is provided as follows:

"That the provisions of chapter forty-five of the said General Laws of Arkansas entitled 'Criminal Law,' except as to the crimes and misdemeanors mentioned in the proviso to this section, and the provisions of chapter forty-six of said General Laws of Arkansas, entitled 'Criminal Procedure,' as far as they are applicable, are hereby extended over and put in force in the Indian Territory, and jurisdiction to enforce said provisions is hereby conferred upon the United States court therein: Provided, that in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses, the laws of the United States shall govern as to such offenses."

The act of Congress approved March 1, 1895, c. 145, 28 Stat. 693, entitled "An act to provide for the appointment of additional judges of the United States court in the Indian Territory, and for other purposes," under section 4, provided, among other things, as follows:

"The provisions of chapter forty-five of Mansfield's Digest of the General Laws of Arkansas, entitled 'Criminal Law,' except as to the crimes and misdemeanors mentioned in the proviso of this section, and chapter forty-six of said Laws of Arkansas, contained in said Digest, entitled 'Criminal Procedure,' and chapter ninety-one of said General Laws, regulating the jurisdiction and procedure before justices of the peace in civil cases, be, and they are hereby extended to and put in force in the Indian Territory; and the jurisdiction to enforce said provisions is hereby conferred upon the United States court in the Indian Territory: Provided, that in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses, the laws of the United States shall govern as to said offenses, except for the crime of larceny, the punishment for which shall be that prescribed by the laws of the state of Ar-

3 Cr.—3

kansas, any law in force in said Indian Territory to the contrary notwithstanding."

And section 7 of said act provides as follows:

"That all prosecutions for crimes or offenses of which United States court in the Indian Territory shall have jurisdiction shall be had within the district in which said offense shall have been committed, and in the court nearest or most convenient to the locality where it is committed, to be determined by the judge on motion to transfer the trial of the case from one court to another. * * * All cases shall be tried in the court to which the process is returnable, unless a change of venue is allowed, in which case the court shall change the venue to the nearest place of holding court within the district, and any civil cause may be removed to another district for trial if the court shall so order on the application of either party."

In the case of *Simon et al. v. United States,* reported in 4 Ind. T. 688, 76 S. W. 280, Chief Justice Gill, speaking for the United States Court of Appeals of the Indian Territory, said:

"This court has held in *Williams v. United States,* 4 Ind. T. 269, 69 S. W. 871, as follows: 'But under Act March 1, 1895, c. 145, 28 Stat. 696, we are of opinion that Congress intended to put in force, and did put in force, chapters 45 and 46 of the laws of Arkansas, contained in Mansf. Dig. (Ann. St. Ind. T. 1899, cc. 19, 20), entitled, respectively, "Criminal Law" and "Criminal Procedure," and, except where the punishment is different, as provided in the laws of the United States, and as provided in Mansfield's Digest, in said chapter 45, said chapters 45 and 46 are exclusive of all other laws, except, of course, such laws as have since been put in force by Congress.' In other words, it is our construction of the act of March 1, 1895, that, as to criminal procedure, Congress has fixed for Indian Territory, exclusive of all other statutes of the United States, chapter 46 of Mansfield's Digest; and this being true, section 1014, Rev. St. U. S. (U. S. Comp. St. 1901, p. 716), has no force in Indian Territory, it being in conflict with chapter 46, Mansf. Dig. By express provision of Congress, Act May. 2, 1890, c. 182, § 2, 26 Stat. 96 (Ann. St. Ind. T. 1899, § 32), it is provided 'that the word "county," as used in any of the laws of Arkansas, which are put in force in the Indian Territory, shall be construed to embrace the territory within the limits of the judicial divisions in said Indian Territory, and whenever in said laws of Arkansas the word

"county" is used, the words "judicial division" may be substituted therefor in said Indian Territory.'" (*Binyon v. United States,* 4 Ind. T. 642, 76 S. W. 265.)

Under sections 3982, 3983, and 3984, c. 90, of Mansfield's Digest of the Statutes of Arkansas, entitled "Jury," which chapter was put in full force and effect in the Indian Territory by the act of Congress of May 2, 1890, the grand jurors and alternates and petit jurors and alternates were to be selected in the manner provided for in said chapter, from the electors of the county, in both civil and criminal cases in which circuit courts were to be held. Hence it followed that, in the Indian Territory at the time the defendant in this case was indicted, had he been tried in the United States court for the Northern district of said territory, prior to statehood, he would have been entitled to a petit jury drawn from the residents of said district, possessing the qualifications of electors as provided in the chapter of Mansfield's Digest, referred to, relating to jurors. Section 2225 of Mansfield's Digest of the Statutes of Arkansas, chapter 46, entitled "Criminal Procedure," provides as follows:

"Where the judge of the circuit court is satisfied, after having made a fair effort in good faith, for that purpose, that from any cause it will be impracticable to obtain a jury free of bias in the county wherein the prosecution is pending, he shall be authorized to order the sheriff to summon a sufficient number of qualified jurors from some adjoining county in which the judge shall believe there is the greatest probability of obtaining impartial jurors, and, from those so summoned, the jury may be formed."

Section 2227 of said chapter and digest provides:

"The sheriff shall have the same power of summoning jurors under such order that he would have in the county of which he is the sheriff, and the court the same power of coercing the attendance of such jurors that it would have if they were summoned in the same county."

This was the law in the Indian Territory, prior to statehood, and after the passage of the acts of Congress referred to herein; and the United States District Judge of the Northern district of the Indian Territory had the power to enforce its provisions whenever in his sound judgment and discretion, after having

made a fair effort in good faith to obtain a jury free from bias in the district, to summon a petit jury from some adjoining district in the Indian Territory, and this law would unquestionably give the district court of any county in this state, in cases falling within the scope and purview of this decision, the authority and right to summon jurors from a county other than the county in which the defendant is being tried and the court sitting. In other words, where the word "county" appears in said chapter, the words "judicial division" under the act of Congress already above referred to in this opinion, should be substituted, and since under the act of Congress, May 2, 1890, referred to herein, "the Constitution of the United States and all general laws of the United States, which prohibit crimes and misdemeanors in any place within the sole and exclusive jurisdiction of the United States, except in the District of Columbia, and all laws relating to national banking associations, shall have the same force and effect in the Indian Territory as elsewhere in the United States," it follows in our opinion that the Constitution of the United States certainly had as much force and effect in the Indian Territory as elsewhere in the United States, if the act of May 2, 1890, is to be given any effect at all, and that it must be held to mean that the Constitution of the United States shall have the same force and effect in the Indian Territory, from and after the passage of this act of Congress by which the Constitution of the United States was in express terms put in full force and effect in the Indian Territory, as in the states of the Union and in the organized territories thereof. It seems to us that any other construction would do violence to the very words of the act itself, for if the Constitution does not have the same force and effect in the Indian Territory after the passage of this act that it has in the states and in the organized territories of the Union, then there must be places "elsewhere in the United States" where the Constitution has a greater force than in the Indian Territory.

The sixth amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the

right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," etc.

At the time of the alleged commission of the offense in this case the Constitution of the United States was in full force and effect and vigor in the Indian Territory, "as elsewhere in the United States"; the districts of said territory have been "previously ascertained by law" of the United States, and under the provisions of the sixth amendment of the Constitution of the United States and the provisions of section 7 of the act of Congress approved March 1, 1895, the accused, had he been brought to trial in the United States court for the Northern district of the Indian Territory, under the laws in force then, as they stood prior to statehood, as a matter of substantial right, was entitled to enjoy a speedy and public trial by an impartial jury of the Indian Territory, drawn from the body of the Northern district as it then stood.

The case of *United States v. Green et al.* (D. C.) 146 Fed. 776, is precisely in point. In that case Speer, Judge, said:

"The broad question involved depends upon the proper construction to be given article 6 of the amendments to the Constitution of the United States. This was one of those great provisions of personal right which were exacted by the American people as a condition to the adoption of the Constitution itself. It was proposed to the Legislatures of the several states by the first Congress on the 25th of September, 1779, and was ratified by a sufficient number of the states in that year and in the years immediately following. It provides: 'In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.' The term 'previously ascertained by law' necessarily imports previously to the commission of the crime, or at least to the accusation. Now it will not be disputed that the offense charged against the prisoners, if offense it be, was committed before the creation of the Southwestern division of the Southern district of Georgia, with provision for courts at Valdosta. At that time the Eastern division of the district comprehended the counties from which the grand jurors who found the indict-

ments under consideration were drawn. The district as it then stood was, therefore, the district as it had been previously ascertained by law. It follows that since a large number of counties have been, subsequently to the alleged commission of the offense, withdrawn from the Eastern division and comprehended in the Southwestern division, the Eastern division now at this time is not as it had been previously ascertained by law. It follows that this principle of our organic law, which is over and above all other laws, obliges the court to try the defendants in the district as it stood at the time the offense is alleged to have been committed. The obvious intention of the framers of the Constitution was to create a vicinage for the court from which jurors must be drawn. The vicinage was the late Eastern division of the Southern district of Georgia, but that vicinage had been impaired, as we have seen, by an act of Congress. Acts of Congress cannot impair the Constitution or its effect. It follows, therefore, that as to these prisoners the vicinage in which they are to be tried is the Eastern division of the Southern district of Georgia as it had been previously ascertained at the time the offense is alleged to have been committed."

The defendant made the following objection at the inception of the trial, which was overruled and an exception duly saved, to wit:

"That this court has no jurisdiction to proceed further, and for the further reason that the jury was not properly impaneled and according to law."

Taking this view of the law, we must hold that this defendant in this case was, and is now, entitled to have a petit jury, possessing the qualifications provided for under the laws of Arkansas in force in the Indian Territory at the time of the alleged commission of the crime of which he stands charged, drawn from the body of what was the Northern district of the Indian Territory at the time of the alleged commission of the offense. Under the "Enabling Act" the district courts of the various counties which have been carved out of what was the Indian Territory are made successors of the old United States courts, and are given full power and jurisdiction to proceed with all cases that were pending when statehood came and which have been subsequently and properly transferred to them for trial, under the laws that

were in force in said territory at the time of the passage of said act.

Section 2283 of chapter 46 of Mansfield's Digest, entitled "Criminal Procedure," provides:

"A general verdict is either 'guilty' or 'not guilty'; if guilty, the jury affixing the punishment, if the amount thereof is not determined by law."

In this case the record shows that the defendant requested the trial court to give the following instruction, to wit:

"You are instructed that if you should find, by your verdict, the defendant guilty of manslaughter, you may fix the punishment at a fine of not more than $1,000, or by imprisonment not more than 10 years, or by both fine and imprisonment."

And that the trial court refused to grant the request of the defendant as contained in said instruction, to which refusal the defendant duly excepted.

In the case of *Taylor v. United States,* reported in 6 Ind. T. 350, 98 S. W. 123, Chief Justice Gill, speaking for the United States Court of Appeals of the Indian Territory, among other things, said:

"Counsel for appellee contends in a very strong presentation of the matter, that the district courts in Indian Territory are governed as to fixing penalties by the United States Statutes and procedure, and that the court alone is authorized to fix the penalty, the jury being authorized only to determine whether guilty or not. We cannot accede to this. In *Williams v. United States,* 4 Ind. T. 204, 69 S. W. 849, this court held: 'But, under the act of March 1, 1895, we are of opinion that Congress intended to put in force, and did put in force, chapters 45 and 46 of Mansfield's Digest, entitled respectively "Criminal Law" and "Criminal Procedure." ' *Watkins v. United States,* 1 Ind. T. 364, 41 S. W. 1044. Mansf. Dig. c. 46, § 2283, provides what a general verdict of a jury shall contain as follows: 'Section 2283. A general verdict is either "guilty" or "not guilty"; if guilty, the jury affixing the punishment, if the amount thereof is not determined by law.' Holding, as we do, that chapter 46 of Mansfield's Digest is in force, the law gives the defendant the right to demand that the jury affix the punishment, except under those statutes in which it is provided that the punishment shall be fixed in the discretion of the court. Failure to instruct the

jury of this right, when requested by defendant, is prejudicial error. The motion or new trial should have been granted.

"The cause is reversed, and remanded with directions to grant defendant a new trial."

In the case of *Reynolds v. United States,* reported in 7 Ind. T. 51, 103 S. W. 762, Justice Clayton, in delivering the opinion of the United States Court of Appeals for the Indian Territory, said:

"The fourteenth specification of error is that the court erred in refusing to allow the jury to assess the punishment. In the case of *Taylor v. United States,* 6 Ind. T. 350, 98 S. W. 123, this court, speaking through Chief Justice Gill, says: 'Holding, as we do, that chapter 46 of Mansfield's Digest is in force, the law gives the defendant the right to demand that the jury affix the punishment, except under the statutes in which it is provided that the punishment shall be fixed in the discretion of the court. Failure to instruct the jury of this right when requested by defendant is prejudicial error.' In this case, while there was no request for such a charge, the court, over the objection of the defendant, to which exception was saved, instructed the jury that they were not to assess the punishment, and of course this was equivalent of a request, and therefore prejudicial error, entitling the defendant to a new trial. * * *"

Holding this view of the law, as we are compelled to do under the authorities cited, it was reversible error in the trial court to refuse to give this instruction asked for by the defendant which permitted the jury to fix his punishment in the event they found him guilty, as the defendant was entitled to be tried and to be dealt with under the law as it existed at the time of the commission of the crime of which he stood charged, and the denial of this right under the law imposed a hardship upon the accused, seriously altered his position to his disadvantage, and was prejudicial to his substantial rights.

Section 2239 of Mansfield's Digest (chapter 46), entitled "Criminal Procedure," is as follows:

"The state shall be entitled to ten peremptory challenges in prosecutions for felony, and to three in prosecution for misdemeanor."

Section 2240 of said digest (chapter 46), entitled, "Criminal Procedure," provides:

"The defendant is entitled to twenty peremptory challenges in prosecutions for felony, and to three in prosecutions for misdemeanor."

In the case of *Watkins v. United States*, reported in 1 Ind. T. 364, 44 S. W. 1044, the United States Court of Appeals of the Indian Territory, speaking through Chief Justice Springer, said:

"The first error assigned presents the question as to whether the laws of the United States in force in all the states, or the laws of Arkansas, put in force in the Indian Territory, govern in the selection of juries in capital cases in the United States court. The United States Revised Statutes (section 819) limits the government to five peremptory challenges in capital cases, while section 2239 of Mansfield's Digest of the Laws of Arkansas, in force in the Indian Territory, allows the prosecution ten challenges in such cases. Chapter 46 of Mansfield's Digest entitled 'Criminal Procedure,' was put in force in the Indian Territory, both by act of May 2, 1890 (section 33), and by the act of March 1, 1895 (section 4). By the former act the provisions of this chapter were qualified by the words, 'as far as they are applicable,' but by the last-named act there was no qualification or exception whatever. We are therefore of the opinion that in capital and other felony cases the provisions of section 2239 of Mansfield's Digest. which allow the prosecution ten peremptory challenges, are in force in the Indian Territory, and that the court did not commit any error in allowing that number of challenges in this case."

Under this decision, in view of section 2240 of Mansfield's Digest, a defendant, charged by indictment with the commission of a felony in the United States court for any judicial district of the Indian Territory, prior to statehood, in the prosecution for such felony, under such indictments, in the district courts of the state of Oklahoma to which such cases have been properly transferred by the provisions of the Enabling Act, is entitled to twenty peremptory challenges in all such cases.

We are therefore of the opinion that the defendant in this case, the plaintiff in error here, is entitled to be tried and dealt with under the laws as they existed at the time of the alleged

commission of the crime of which he stands charged, in all matters where such laws vouchsafe to him a substantial protection. And when, subsequent to the alleged commission of the offense, such laws, if not wholly dispensed with, have been so altered or impaired, before he is placed on his trial, as to injuriously affect and prejudice his substantial rights, impose hardships upon him, and seriously alter his position or situation to his disadvantage, to such extent such subsequent abrogation or alterations in the laws must be held to be *ex post facto.* Inasmuch as there must be a new trial, we do not deem it necessary to notice the other specifications of error contained in the record, and as to them we therefore express no opinion.

Reversed and remanded, with instructions to the trial court to give defendant, plaintiff in error here, a new trial.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.