Parris Thomas DOLLAR, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–339.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1984.

Michael D. Clark, Clark & Clark, Ardmore, for appellant.

Jan Eric Cartwright, Atty. Gen. of Okl., Eric Hermanson, Asst. Atty. Gen., Oklahoma City, for appellee.

## MEMORANDUM OPINION

BUSSEY, Presiding Judge:

The appellant, Parris Thomas Dollar, hereinafter referred to as the defendant, was convicted of Rape in the First Degree, After Former Conviction of Two or More Felonies, and Robbery by Force, After Former Conviction of Two or More Felonies, in Carter County District Court, Case No. CRF–79–170, was sentenced to one hundred

four (104) years and one day imprisonment and twenty (20) years and one day imprisonment, respectively, and he appeals.

The testimony at trial between the defendant and the victim, Ms. C.M.J., directly conflicted, but can be summarized as follows. Ms. C.M.J. testified that she accepted a ride from the defendant on his motorcycle as she was walking home on a Carter County road in the early morning hours of June 30, 1979, that he pulled off the road, put a knife to her throat, forced her into a wooded area and raped her. She stated that he took her driver's license when he left and she denied having sex with her date a few hours before this incident. Her date corroborated that part of her testimony.

The defendant testified that he was intoxicated and picked up Ms. C.M.J. on his motorcycle, that *she* was interested in having sex and made fun of him when he could not get an erection, that he got angry, that she took a knife from her purse and lunged at him and that he wrestled with her on the ground, hitting her until she threw the knife away. He denied having sexual intercourse with her and testified that she had told him that she had sex with her date shortly before she met the defendant.

As one assignment of error, the defendant claims trial court abused its discretion by declaring a mistrial in his first trial without allowing the jury to recess and resume deliberation the next morning, thereby placing him in double jeopardy.

The sole mention in the record before us of a mistrial is a court minute wherein the trial judge notes that the jury began deliberating at approximately 10:00 a.m. on November 15, 1979, and at 7:55 p.m., the jury advised that it was deadlocked and it was polled. The jury deliberated another hour after being given further instructions but was unable to reach a verdict; thereupon the trial judge declared a mistrial, resulting in a second trial, from which this appeal is taken.

The defendant would have this Court find that the trial court did not follow the "manifest necessity" test announced in *United*

*States v. Perez,* 9 Wheat. 578, 22 U.S. 578, 6 L.Ed. 165 (1824),[1] and adopted by this Court in *Bennett v. Shumate,* 586 P.2d 333 (Okl. Cr.1978).

■ However, in the present case, we are unable to determine whether the trial court followed that standard because, unlike *Bennett v. Shumate,* supra, the record before us is insufficient for this Court to determine the issue. We reiterate that defense counsel has a duty to insure that a sufficient record is provided this Court to determine the issues raised. *Martinez v. State,* 569 P.2d 497 (Okl.Cr.1977). Moreover, it appears from the record before us that the jury deadlocked and the jurors were unable to change their decision and that the defendant failed to file with this Court after his first trial a writ of prohibition asking this Court to rule on the double jeopardy question, thereby waiving the alleged error by proceeding to his second trial. We fail to find an abuse of discretion under these circumstances and therefore, this assignment of error is without merit.

■ Next, the defendant asserts that the trial court erred in not requiring a sanity hearing after it had notice of his possible incompetence through his motion for continuance stating that he refused to aid in the preparation of his defense and his application for order of commitment accompanied by a doctor's affidavit that he should be committed to a state hospital to determine his sanity.

· The authority for ordering a sanity hearing appears in 22 O.S.1981, § 1162, in pertinent part as follows:

... if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled ....

It is well-settled in Oklahoma that the doubt referred to in the statute is that doubt which must arise in the mind of the trial court. See, *Russell v. State,* 528 P.2d 336 (Okl.Cr.1974). The trial court may look to the source of the information and motive indetermining whether there is doubt which would justify a sanity hearing, and the existence of a doubt as to defendant's sanity must arise from facts of a substantial nature. See, *Laslovich v. State,* 377 P.2d 977 (Okl.Cr.1962). There must exist reasons to believe that the defendant's claim of insanity is genuine and not simulated to delay justice, and the finding of the trial court will not be disturbed on appeal unless a clear abuse of discretion is shown. See, *Haynes v. State,* 473 P.2d 299 (Okl.Cr. 1970); *Reynolds v. State,* 575 P.2d 628 (Okl.Cr.1978).

In the present case, the judge in his second trial had ample opportunity to observe and evaluate defendant's condition because he presided at his first trial. We also note that Dollar's application for order of commitment, dated November 8, 1979, was voluntarily withdrawn one day later, four days before his trial was to commence, and that the issue of defendant's sanity was not even raised in the second trial. In addition to the foregoing reasons, this assignment of error was not in his motion for a new trial and thus was not properly preserved for appellate review. *Lovick v. State,* 646 P.2d 1296 (Okl.Cr.1982). This assignment of error is without merit.

■ Finally, Dollar argues that the trial court abused its discretion in admitting into evidence eight color photographs because their emotional shock value outweighed their probative value. We disagree. The various photographs depicted two bruised breasts, a red mark on the victim's neck allegedly made by a knife and

---

1. In *Perez,* supra, Justice Story stated:

We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere....

her face, swollen and reddened around the eyes.

The test for admissibility of allegedly gruesome pictures is whether the probative value of the evidence, as it relates to an issue in the case, outweighs the prejudicial effect. *Glidewell v. State,* 626 P.2d 1351 (Okl.Cr.1981). The admissibility of such pictures is within the trial court's discretion and will not be disturbed on appeal unless an abuse of discretion is shown. *Glidewell,* supra, at 1354.

The probative value of the photographs is great in that they reflect the injuries incurred by the victim and tend to corroborate her testimony that the defendant hit her in the face, put a knife to her throat and purposefully twisted her breasts. See, *Vierrether v. State,* 583 P.2d 1112 (Okl.Cr. 1978). This assignment of error is without merit.

For all of the above reasons, the judgments and sentences are AFFIRMED.

CORNISH and BRETT, JJ., concur.