Steven VAN WHITE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–84–557.

Court of Criminal Appeals of Oklahoma.

March 9, 1988.

---

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., and Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Steven Van White, was tried by jury in Okmulgee District Court, Case No. CRF–82–375, before the Honorable John Maley, District Judge. He was convicted of First Degree Malice Aforethought Murder (21 O.S.1981, § 701.7) (Count I), Assault and Battery With Intent to Kill (21 O.S.1981, § 652) (Count II), Robbery With a Dangerous Weapon, (21 O.S. Supp.1982, § 801) (Count III), and Attempted Rape, (21 O.S.1981, § 1114) (Count IV). The jury recommended sentences respectively of death, twenty (20) years, and two terms of life imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We reverse and remand Count I for a new trial, and otherwise affirm. In light of our disposition of appellant's thirteenth assignment of error, which requires that Count I be reversed and remanded for a new trial, we find it unnecessary to address any other assignments of error relating solely to Count I.

Briefly stated, on the afternoon of December 22, 1982, the appellant followed Geraldine Dennis into a thrift store, pulled a steak knife from his pocket, and began stabbing her in the neck and face. The store clerk, Shirley Mann, came forward from the back of the shop and attempted to use the telephone. The appellant confronted Ms. Mann, she dropped the telephone, and the appellant resumed stabbing Ms. Dennis. Subsequently, Ms. Dennis observed the appellant force Ms. Mann down the hall at knifepoint. The appellant then stabbed Ms. Mann to death in a bathroom

in the back of the store. Appellant admitted pulling Ms. Mann's pants and panties down to her knees in an attempt to have sex with her, but claimed that he changed his mind and did not do so. Appellant then struck Ms. Mann several times in the head with a bowling ball. Meanwhile, Ms. Dennis hid in a closet, but the appellant found her and began stabbing her again until she lost consciousness. Appellant exchanged his clothes for some in the store before he left. The State also presented testimony indicating that the appellant stole an undetermined amount of money from Ms. Dennis' purse and from the thrift store's donation box.

Larry Mullins, a fingerprint expert, identified prints taken from the store and a bowling ball in the store as belonging to the appellant. Kenneth Ede, a serologist with the OSBI, testified that blood found on a steak knife, a pair of coveralls, door scrapings, and the appellant's sweater, belonged to Ms. Mann. Blood samples taken from the appellant's tennis shoes were consistent with either Ms. Mann's or the appellant's blood type. Dr. Robert Hemphill, Deputy Chief Medical Examiner, testified that Ms. Mann died as the result of a stab wound to the neck which severed the left carotid artery, causing her to bleed to death. He stated that he found two or three slight abrasions at the entrance of Ms. Mann's vagina, which could have been caused by an attempt to insert a penis or by rubbing some rough object against that area. Dr. Hemphill found no sperm present in the victim's vagina, rectum or mouth.

The appellant was apprehended the next day when he was spotted in the downtown area of Okmulgee with blood-stained tennis shoes. After the appellant voluntarily accompanied the officers to the police station, he was read his *Miranda* rights. Officers observed a fresh cut across the appellant's hand. Thereafter, appellant confessed to stabbing the two women, claiming that he was high on paint fumes and that the devil made him do it.

Dr. Thomas Donica, a private psychiatrist, testified on behalf of the appellant at trial, that the appellant was brain damaged, that his judgment was so impaired that he could not form the wilful intent to kill, that he could not control his impulses and that he was insane at the time of the killings. On cross-examination, Donica admitted that he had not examined the appellant until nine (9) months after the homicide, and then only for a total of three (3) hours. Angela White, the appellant's mother, testified concerning appellant's prior history of paint sniffing, his two prior attempts to commit suicide, and his stabbing of his father and another man. Appellant testified that he was twenty-four years old, that the devil told him to do things, that he did not remember the killing of Ms. Mann, or being in a mental hospital or confessing to the crime.

Dr. Sandra Petrick, a clinical psychologist at Eastern State Hospital, testified in rebuttal that the appellant was competent to stand trial and that in her opinion he was not psychotic, but was malingering. Dr. Lance Portnoff, a neuropsychologist at Eastern State Hospital, testified that he did not believe the appellant was mentally ill, but that he was so acting in order to feign mental illness. Mary Williams, a cook at the Okmulgee County Jail, said that the appellant told her that he would be "in Vinita for three or four years and I will be right back out here; I'm going to kill alot of bitches."

## I.

### Pre-Trial Issues

■ In his fourth assignment of error, the appellant claims that the trial court erred in denying appellant's motion for a second hearing on competency. Appellant was found incompetent to stand trial on November 22, 1983. On April 16, 1984, he was determined to be competent to stand trial. On May 4, 1984, appellant filed a second motion for a competency hearing. At the April 16, 1984, hearing in which the appellant was subsequently determined to be competent, the State presented the testimony of a social worker, a psychologist, and a psychiatrist, who had observed the appellant at Eastern State Hospital, and

who all agreed that the appellant's "rocking" motions were part of his attempt to fake mental illness, and in their opinion he was competent to stand trial. The appellant presented the testimony of Dr. Thomas Donica, a private psychiatrist, who testified that the appellant had organic brain damage, that he could not assist his attorney, that he might possibly recover within three (3) years, and that it was doubtful that the appellant was malingering, although it was possible. In light of the foregoing, we find that the trial judge's finding is supported by competent evidence and, in the absence of a showing of an abuse of discretion, we will not disturb that finding on appeal. *See Moore v. State*, 672 P.2d 1175, 1177 (Okla. Crim.App.1983).

## II.

### *Issues Relating to Guilt–Innocence*

#### A.

■ In his sixth assignment of error, appellant argues that the failure of the trial court to provide him with funds for an expert witness deprived him of his sole defense. Dr. Thomas Donica, a private psychiatrist, testified at trial on behalf of the appellant that, in his opinion, the appellant suffered from organic brain damage, that such opinion was substantiated by a neuropsychological report done by Dr. Russell Adams, and that the appellant was insane at the time of the offense insofar as he could not understand the nature and consequences of his acts. Appellant claims that error occurred because he was unable to personally have Dr. Adams testify to the results of his neuropsychological exam. The appellant in fact presented expert testimony to support his insanity defense and the report made by Dr. Adams as a result of his evaluation of the appellant was admitted in its entirety as Defense Exhibit No. 2, for the jury's consideration. Accordingly, we cannot say that the appellant was denied of the basic tools of an adequate defense. The instant case is distinguishable from *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), where the defendant was denied access to a competent psychiatrist. We cannot say preju-

dice occurred in the denial of these funds. *See Standridge v. State*, 701 P.2d 761, 764 (Okla.Crim.App.1985). This assignment of error is without merit.

#### B.

■ In his seventh assignment of error, appellant complains that the trial court exposed the jury to prejudicial hearsay by allowing Dr. Lance Portnoff testify to the conclusion of a scientific study. Under 12 O.S.1981, § 2703, an expert witness may rely upon facts or data which are not admissible in evidence, so long as the data is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject...." Although Dr. Portnoff did not testify that the Rosenhand report concerning faking mental illness was of a type reasonably relied upon by other neuropsychologists in diagnosing malingering, we note that the appellant failed to properly preserve this issue for review by specifically objecting on this ground at trial. *See* 12 O.S.1981, § 2104(A)(1). The Legislative History of Section 2703 clearly indicates that the rule was designed to broaden the basis for expert opinions, noting that most of the sources relied upon by expert witnesses would be admissible in evidence, "but only with the expenditure of substantial time in producing and examining various authenticating witnesses." *See* 1 L. Whinery, *Guide to the Oklahoma Evidence Code*, 245–46 (1985). An examination of the record in this case reveals that this evidence was merely cumulative to other competent evidence relating to the feigning of mental illness, and appellant has failed to show how he was prejudiced or deprived of a substantial right. *See* 12 O.S.1981, § 2104(A). *See also Ozbun v. State*, 659 P.2d 954, 958 (Okla.Crim.App.1983).

#### C.

■ In his eighth assignment of error, appellant claims that the trial court erred in admitting a letter from Eastern State Hospital indicating appellant was competent to stand trial. A careful review of the record reveals that the trial court first ad-

mitted several defense exhibits which detailed the mental health history of the appellant including the initial determination that he was incompetent to stand trial. In order not to mislead the jury, the trial court later allowed admission of the letter from Eastern State Hospital to show that the appellant had subsequently been found competent to stand trial. If the trial judge had failed to admit this letter, after having previously admitted the foregoing defense exhibits, the jury would have been misled to believe that the appellant had never been found competent to stand trial. Further, a claim of incompetency to stand trial is distinct from a defense of insanity at the time of the offense. *See State v. Najar*, 104 N.M. 540, 724 P.2d 249, 251 (1986). Any alleged error was invited by appellant insofar as he successfully gained admission of such evidence initially and, in the absence of any showing that the admission of the letter prejudicially influenced the verdict or sentence so as to undermine confidence in the outcome of the proceedings, we reject appellant's contention. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Smith v. State*, 727 P.2d 1366, 1371 (Okla.Crim.App. 1986); *Wolverton v. State*, 707 P.2d 46, 47 (Okla.Crim.App.1985); *Dutton v. State*, 674 P.2d 1134, 1139 (Okla.Crim.App.1984); 20 O.S.1981, § 3001.1.

### D.

In his ninth assignment of error, appellant contends that the trial court erred in denying his request to review police reports for "possible" evidence of the defendant's intoxication on the date of the homicide. Police investigative reports are not discoverable unless they contain evidence which is both "favorable" to the accused and "material" to guilt or punishment. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985). In the instant case, the appellant has wholly failed to demonstrate constitutional error by showing that the prosecution suppressed favorable evidence, material to guilt or punishment, which deprived him of a fair trial by undermining confidence in the outcome of the trial. *Id.*

at 678, 105 S.Ct. at 3381. Appellant has failed to show any "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3384. Appellant presented substantial testimony from which the jury could have concluded that he was under the intoxication of paint fumes, but the jury declined to believe such testimony.

### E.

Appellant argues in his tenth assignment of error that one isolated remark of the prosecutor, that the appellant said, "hell, no, I ain't crazy," deprived him of a fair trial. The foregoing comment had support in the record to the extent that the State presented testimony that the appellant was feigning mental illness and that he told a cook at the jail that, "I be damn, I'm not going to prison … I will … stay in Vinita for three or four years and I will be right back out here; I'm going to kill alot of bitches." Although the prosecutor came close to going outside the record, which is clearly erroneous, in light of the strong evidence of guilt, the failure to make a timely specific objection, and the fact that there was evidence indicating the appellant was faking mental illness, we cannot say that a reversal or modification is warranted. *See Fisher v. State*, 736 P.2d 1003, 1009 (Okla.Crim.App.1987).

### F.

In his thirteenth assignment of error, appellant argues that reversal is required because neither the voir dire nor the hearing on his second application for a competency hearing was transcribed. For the reasons given in Part I, we reject appellant's argument concerning the failure to transcribe the motion hearing on the second application for a competency hearing. This Court is particularly concerned with the failure to transcribe voir dire, however, insofar as such failure prevents this Court from conducting its mandatory sentence review pursuant to 21 O.S.Supp.1985, § 701.13. In *Kelly v. State*, 692 P.2d 563, 565–66 (Okla.Crim.App.1984), this writer

joined Judge Brett's special concurrence which held that in order to effectuate this Court's mandatory sentence review in capital cases, a complete stenographic record must be taken in all capital proceedings. Our mandatory sentence review provides an additional safeguard against the death penalty being imposed in an arbitrary and capricious manner, and thus undergirds the constitutionality of our death penalty statutes. *Id.* The foregoing considerations strongly support a departure from the general rule applicable in all non-capital cases, that the appellant is responsible for seeing that a complete record is provided on appeal. *Id.* When the State seeks the ultimate penalty of death, it is appropriate that the State bear the responsibility for ensuring that a proper record is provided to enable this Court to conduct its mandatory sentence review under 21 O.S.Supp.1985, § 701.13.

We reject the State's argument that we abandon *Kelly,* and charge capital defendants with the duty to ensure that the record is complete "regardless of the designation of record...." Indeed, the State concedes in this case, as it must, that the Designation of Record filed by trial counsel specifically requested transcription of voir dire. Like *Kelly,* the record in the instant case does not explain why the voir dire was not stenographically reported. On May 8, 1987, this Court remanded this case to the Okmulgee County District Court and directed the Honorable John Maley to conduct an evidentiary hearing to determine whether a transcript of voir dire could be transcribed from any existing notes or tapes. On June 2, 1987, the Honorable John Maley filed his findings of facts with this Court. That order stated in relevant part:

> [T]he court reporter ... made a full record from voir dire through closing argument; That a record was prepared for appeal but that the voir dire was not transcribed ... That the tapes used from the Steven Van White case were reused and therefore this part of the transcript of the Van White case was destroyed ... That ... [the court reporter's] notes ... were destroyed; That all tape recordings and hand written reported notes of the Steven Van White trial ... have all been destroyed and are therefore not available for any kind of record.

In the instant case, appellant's counsel specifically requested in his designation of record that the voir dire be transcribed. For some unknown reason, the court reporter failed to transcribe the jury selection process as requested. In his motion for new trial, appellant argued that the trial court improperly excused prospective jurors. Without a transcript of the jury selection process, we cannot determine whether the trial court erred in excluding prospective jurors under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed. 2d 841 (1985). Most importantly, in the absence of a complete record, we cannot adequately conduct our mandatory sentence review to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor...." 21 O.S.Supp.1985, § 701.13(C)(1). We believe that an accurate record of voir dire is an essential component in conducting this Court's mandatory sentence review.

At oral argument on November 5, 1987, Okmulgee County Assistant District Attorney Gregory Stidham, for the first time, raised the possibility of supplementing the appellate record with the trial judge's notes as a substitute for a transcript of the voir dire proceedings. On January 5, 1988, this Court heard oral arguments concerning the State's application to supplement the record with the trial judge's notes as a substitute for a transcript of voir dire. In their brief in support, the State alleged that "the trial judge's notes are a thorough substitution of the voir dire proceedings." *Brief of Appellee,* at 3. Even a cursory review of the trial judge's notes, however, reveals that they do not even come close to a "thorough substitution" of a transcript of voir dire. The notes simply do not record any of the questions actually propounded to the prospective jurors by the trial judge or counsel for either side, nor do they

record any of the actual responses of the prospective jurors. Indeed, during oral argument counsel for appellee conceded that the trial judge's notes merely recorded the *Witherspoon* questions intended to be utilized by the trial judge, but that the actual questions asked and the actual responses given by prospective jurors could not be reconstructed. After careful consideration, we find that the trial judge's notes, filed by the State with their application to supplement the record, are woefully inadequate as a substitute for a transcript of voir dire. The most critical part of the voir dire relating to the *Witherspoon–Witt* issue, the actual responses of the potential jurors to the *Witherspoon* questions, cannot be reconstructed from the trial judge's notes. Moreover, we have no way of determining whether or not the jury was improperly prejudiced to impose a sentence of death during voir dire. Consequently, the record is inadequate for this Court to conduct its mandatory sentence review. Finally, in response to the State's request for an evidentiary hearing to reconstruct voir dire through testimony of the trial participants, we agree with the Georgia Supreme Court: "A post-trial examination of lawyers and court officials, or of excluded veniremen, would not be a satisfactory means for this Court to perform its [mandatory sentence] review function." *Owens v. State*, 233 Ga. 869, 214 S.E.2d 173, 175–76 (1975).

Accordingly, we hold that under *Kelly, supra,* the failure of the court reporter to transcribe voir dire as requested by counsel for appellant in his designation of record, requires that appellant's judgment and sentence for first degree murder on Count I must be reversed and remanded for a new trial. In so holding, we specifically adopt Judge Brett's special concurrence in *Kelly, supra,* requiring that in order to effectuate this Court's mandatory sentence review obligation under 21 O.S. Supp.1985, § 701.13(C)(1), a complete stenographic record shall be taken in all capital proceedings. Finally, we reject appellant's contention that all of his convictions must be reversed because of the lack of a transcript of voir dire. In so holding, we adhere to the established rule that with re-

gard to the non-capital counts, the burden was upon appellant to ensure a complete record upon appeal. *Kelly, supra,* at 565; *Dollar v. State,* 674 P.2d 48, 50 (Okla.Crim. App.1984).

### G.

In his twenty-second assignment of error, appellant claims that the trial court erred in instructing the jury that voluntary intoxication was not a defense to attempted rape. Voluntary intoxication is not a defense to a crime, unless the intoxication rendered the defendant incapable of forming the necessary mental intent. *Jones v. State,* 648 P.2d 1251, 1255 (Okla. Crim.App.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983). We believe that appellant has failed to preserve this issue for appellate review in the absence of a timely objection and submission of written requested instructions to the trial court. *Millwood v. State,* 721 P.2d 1322, 1326 (Okla.Crim.App.1986). Further, we are hard-pressed to find prejudice where the appellant himself voluntarily told police officers that he "was going to [have sex with her] but.... if I would have stayed a little more longer, I would have got caught...." State's Exhibit No. 56. In light of the evidence presented, we cannot say that the appellant was deprived of a substantial right on this record. 20 O.S.1981, § 3001.1.

### H.

In his twenty-third assignment of error, appellant claims that the evidence was insufficient to support a conviction for attempted rape. Appellant baldly asserts that "there were no intervening 'circumstances independent of the will of the defendant' which kept him from continuing the crime of rape." *See* OUJI–CR 211 (1981). This assignment is not supported by relevant citations or discussions of caselaw or by a discussion of the evidence. In the absence of fundamental error, we will not search the books to support the appellant's contentions. *See Wolfenbarger v. State,* 710 P.2d 114, 116 (Okla.Crim.App. 1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct.

2915, 91 L.Ed.2d 544 (1986). Even so, when the voluntary confession of the appellant is taken together with the circumstantial evidence presented at trial, we believe that a rational trier of fact could find the appellant guilty of attempted rape beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202, 203–04 (Okla.Crim.App.1985). This assignment is without merit.

## I.

In his fourteenth assignment of error, appellant complains that the cumulative effect of errors during the first stage deprived appellant of his right to a fair trial. We reject this contention in light of our disposition of the foregoing assignments of error.

## III.

### *Issues Relating to Punishment*
#### A.

In light of our holding that appellant's judgment and sentence for first degree murder on Count I must be reversed and remanded for a new trial, we find it unnecessary to address the remaining assignments of error relating to the imposition of the death sentence.

#### B.

■■■ In his twenty-first assignment of error, appellant argues that his conviction for both robbery and first degree malice aforethought murder violated the double jeopardy clause of both the Oklahoma and United States Constitutions. *See* U.S. Const. amend. V; Okla. Const. art. II, § 21. Appellant relies solely on *Lawson v. State,* 484 P.2d 900 (Okla.Crim.App.1971). In *Lawson,* this Court held that a defendant who had previously been convicted of Robbery With Firearms could not subsequently be prosecuted for First Degree Burglary where the charges arose out of the same criminal transaction and was supported by the same testimony. *Lawson* does not involve the question of multiple punishment for the same offense, and thus does not support the proposition for which it is cited. Appellant has failed to support this assign-

ment of error with any other relevant authority, and therefore this assignment of error is without merit. *See Wolfenbarger v. State, supra.* Moreover, robbery is not a lesser included offense of first degree malice aforethought murder, but the two offenses are separate and distinct. *See Weatherly v. State,* 733 P.2d 1331, 1336–37 (Okla.Crim.App.1987). This assignment is without merit.

Accordingly, on the basis of the foregoing, the judgment and sentence on Count I for first degree murder is REVERSED and REMANDED for a new trial, and the judgments and sentences on Counts II, III and IV are AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurring in part/dissenting in part.

BUSSEY, Judge, concurring in part/dissenting in part.

I agree that the death sentence must be set aside due to failure of the court reporter to transcribe voir dire proceedings after they had been recorded and properly requested in the designation of record.

However, I feel I must express differing views on three points. First, I would still require a defendant to request that a record of proceedings be made, regardless of whether the death penalty is sought. Second, even if this burden is shifted to the State, neither this case nor *Kelly,* cited by the majority, is an appropriate case to adopt such a rule. In *Kelly,* this Court unanimously held that the case should be reversed due to improper admission of hearsay testimony. Reversal was granted on the basis of error actually found in the record, rather that on the basis of some speculative error. Similarly, error is found in this case due to demonstrated failure of the reporter to transcribe proceedings after recording and designation. The destruction of those records has rendered proper appellate review impossible.

Finally, even if we use this case to shift the burden to the State, the consequences of the State's failure must be limited to reversal of the death sentence only. If the

burden is shifted, that shift should not exceed the scope of the statute which purportedly caused the shift. Error requiring reversal under that statute should not be extended to the question of guilt. Cases such as this one ought not be remanded for full trial, but only for resentencing.