**Scott Allen HAIN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–466.**

Court of Criminal Appeals of Oklahoma.

April 29, 1993.

Rehearing Denied and Mandate Issued Sept. 14, 1993.

**746**

John Thomas Hall and Elaine Meek, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Carol Price Dillingham, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Judge:

Appellant, Scott Allen Hain, was convicted of two counts each of Murder in the First Degree, Kidnapping, Robbery with Firearms, and Larceny of an Automobile and one count of Arson in the Third Degree after a two stage jury trial in the District Court of Creek County, Case No. CRF–87–240. Following the guilty verdicts, Appellant was sentenced in accordance with the jury's recommendations. He received the death penalty on each count of Murder, ten years per count for Kidnapping, one hundred years per count for Robbery with Firearms, twenty years per count for Larceny of an Automobile and fifteen years for the third degree Arson. Appellant has brought this appeal challenging both the guilty verdicts and the sentences imposed for the crimes.

During the early morning hours of October 6, 1987, Laura Lee Sanders and Michael Houghton were seated in Sanders' car outside a Tulsa bar when they were approached by two men, later determined to be Scott Allen Hain and Robert Wayne Lambert. Hain and Lambert were in the parking lot, waiting to rob a nearby house when they saw Sanders and Houghton talking in the car. Appellant and Lambert forced their way into the car by threatening Houghton with a knife.

Hain drove the car away from the bar, then stopped and robbed Houghton at gunpoint. When Houghton resisted the robbery, Appellant forced him into the trunk of the car. A short while later, Appellant and Lambert stopped and put Sanders in the trunk as well.

After robbing Houghton and getting the keys to his truck, the two men decided to go back to the bar where the incident began and take Houghton's truck as well as Sanders car. Lambert drove the truck away from Tulsa toward Sand Springs. He stopped after driving down a rural Creek County roadway. Appellant followed in Sanders' car with Sanders and Houghton in the trunk.

The two men took Sanders' things, including some clothes, out of her car and put them in the truck. One of them cut the gas line to the car and set it on fire by putting lighted newspaper and a blanket under the dripping fuel line. Houghton and Sanders were banging on the trunk and yelling. Appellant and Lambert left the area, however, returned a short time later to see if the fire was burning well.

The two men stopped at a friend's house in Jennings and left a bag of things belonging to the victims in the garage. They traveled to Wichita, Kansas in Houghton's truck. After spending the five hundred and sixty-five ($565.00) dollars which they got from Houghton and Sanders, the two returned to Tulsa, where they were apprehended on the evening of October 9, 1987.

## STATUS AS A JUVENILE

Appellant's first series of arguments concerns the fact that he was seventeen when the murders of Houghton and Sanders were committed. He complains that the reverse certification procedures in Oklahoma do not sufficiently narrow the class of offenders against which the death penalty may sought; that execution of a juvenile is against societal standards of decency; that the punishment "fails in the 'proportionality' analysis;" and that the classification standards are arbitrary and capricious. We disagree with Appellant's assessment of the statutes concerning the certification process and how they relate to the imposition of punishment in this case or any other case involving the death penalty.

As his first allegation of error, Appellant asserts that the imposition of the death penalty against a juvenile is prohibited by both the Eighth and Fourteenth Amendments to the United States Constitution. Specifically he claims that Oklahoma's reverse certification procedure, which provides that a sixteen or seventeen year old is considered to be an adult when he commits certain crimes, does not meet the standard for "death qualification" set by *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Appellant misrepresents the purpose of the reverse certifica-

tion process when he attempts to apply the principals of *Gregg* solely to the pre-trial reverse certification stage of criminal proceedings.

In *Gregg*, the Supreme Court analyzed the Georgia system of capital punishment to determine whether the problems confronted in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had been resolved. In *Furman*, "the Court held that the penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." *Godfrey v. Georgia*, 446 U.S. 420, 426, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). In *Gregg*, the Court held:

> *Furman* held only that in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the *sentencing* authority would focus on the particularized circumstances of the crime and the defendant. (Emphasis added).

*Id.* 428 U.S. at 199, 96 S.Ct. at 2937.

We most recently considered these dictates in *Allen v. State*, 821 P.2d 371 (Okl. Cr.1991), where we held:

> It has long been recognized that a system of capital punishment must meet strict constitutional requirements to be upheld. The primary goal of any such system must be the allowance of individualized sentencing tempered by a controlled amount of discretion, exercisable by the trier of fact.

■ Oklahoma's system of capital punishment meets the qualifications established by the Supreme Court and on its face is constitutional. Certainly this fact is evidenced by the multitude of Oklahoma cases which have been affirmed by the United States Supreme Court. *See Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). The comprehensive statutory sections concerning death penalty proceedings, coupled with proper instructions to the jury in the punishment stage of the trial, guarantee that the death penalty

will only be assessed against that class of criminals whose crimes set them apart from "any other murder." *Zant v. Stephens*, 462 U.S. 862, 878, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235, 251 (1983).

◼ Appellant has focused on the reverse certification process and attempted to bootstrap the requirement of narrowing qualifications into this preliminary, pre-trial stage of the prosecution. Defining the class of offenders potentially eligible for the death penalty is not a function of 10 O.S.Supp.1986, § 1104.2. That section merely determines whether an alleged offender, either sixteen or seventeen years old, may be prosecuted as an adult or whether he should be treated as a juvenile. To the extent that classification as a juvenile is denied, as it was here, then the admittedly young defendant is afforded all the constitutional protections against the arbitrary assessment of the death penalty as is any other defendant.

We find that the statutory processes carried out in the present case afforded Appellant double protection against the unfair assessment of the death penalty. Appellant had the added security of a preliminary determination as to whether prosecution as an adult was appropriate, death penalty concerns aside. If anything, the reverse certification process adds an additional measure of certainty to the entire criminal process.

◼ In connection with Section 1104.2, Appellant also argues that in general, the standards by which reverse certification is measured are arbitrary and capricious. Appellant correctly argues that in order to meet constitutional standards, any system of classification must provide sufficient standards so as to establish a rational basis for the classification. His argument here, however, fails due to his inability to point out any portion of the process or statutory language which offends any of the constitutional protections. We have consistently held that the standards set out by the statute are appropriate and protect the constitutional guarantees of the individual offender. *A.M.H. v. State*, 766 P.2d 351 (Okl. Cr.1988); *G.E.D. v. State*, 751 P.2d 755

(Okl.Cr.1988); *Trolinger v. State*, 736 P.2d 168 (Okl.Cr.1987).

◼ Appellant's next two arguments with regard to the effect of his age concern the actual assessment of the death penalty. He argues that the execution of murderers who were under the age of eighteen at the time the crime was committed offends the standards of society and that his sentence fails the proportionality standards established by *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We disagree. Both of Appellant's arguments are based on his assertion that "adolescents or children are less blameworthy than adults" and apparently should not be held accountable for their actions. We dispensed with a similar argument in *Sellers v. State*, 809 P.2d 676 (Okl.Cr.1991). In that case we considered the imposition of the death penalty in cases involving defendants who were sixteen years old at the time of their crimes. We recognized that although a plurality of the Supreme Court has held that execution of a person who was under sixteen at the time of the offenses would violate the Eighth Amendment, the Court expressed no opinion concerning seventeen year old criminals. *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988).

In *Sellers*, we rejected the argument the *Thompson* decision should be extended to persons between the ages of sixteen and eighteen. We held:

We are unpersuaded that our previous decisions should be disturbed with respect to a person who was sixteen at the time of his offense. In her concurring opinion [in *Thompson*], Justice O'Connor expressed the belief that a national consensus exists which forbids the execution of any person for crimes committed before the age of sixteen. In the absence of a clear expression by the State Legislature, she found the use of capital punishment to be unauthorized. By excluding persons sixteen years of age who commit murder from the statutory definition of "child", *see* 10 O.S.Supp.1987, § 1101(1), we find that the Legislature clearly expressed its intention that such

persons should be subject to the full range of punishments prescribed for adult offenders.

Appellant offers no effective reason why we should reconsider our previous position. Appellant was afforded the protections of the reverse certification process, including separate appellate review of the trial court's decision prior to his adult criminal prosecution[1]. We believe that the societal interests and standards of decency are properly protected by such a system which independently measures whether or not the individual offender should be treated as a child or as an adult. To the extent the factors involved indicate that treatment as an adult, with its incumbent levels of punishment, is warranted, then standards of decency and proper morality are maintained. We see no reason to find that Appellant's case is outside the scope of expected result of the various procedures employed.

## FIRST STAGE PROCEEDINGS

Next we turn to the allegations of error which Appellant suggests occurred during the first stage of the trial[2]. Appellant asserts that errors occurred in the jury selection process, that he was subjected to double jeopardy, that the jury was improperly instructed and that the trial court committed several errors with regard to the admission of evidence. We will consider these arguments in the order they occurred at the trial.

In propositions thirteen and eighteen of his brief, Appellant claims that he was deprived of a fair jury because he was not allowed to privately individually *voir dire* the members of the panel concerning the pretrial publicity to which they had been exposed and because there were no blacks included in the pool from which the jury was selected. We do not find that either of these allegations justify relief.

As his first claim with respect to the voir dire proceedings at his trial, Appellant claims that the trial court erred when it refused to allow individual questioning of each individual called in order to assess the effect of fairly substantial pretrial publicity. We considered an identical issue in *Vowell v. State*, 728 P.2d 854, 857–58 (Okl. Cr.1986), wherein we held:

> Appellant requested individual voir dire of jurors, as well as sequestration of them during voir dire. Appellant did not have a right to either request, though such may be allowed by the trial court....
>
> The existence of extensive pretrial new coverage does not itself demand individual or sequestered voir dire.... The crux of the issue is whether [a] defendant can receive fair and impartial jurors.... An exhaustive voir dire was conducted accounting for nearly seven hundred pages of transcript, and as previously noted, an apparently impartial jury was selected.

We find no reason to reach a different conclusion in this case. Appellant does not claim that he was denied a fair or impartial jury. There is no indication that he was unable to ask any question of any potential juror. Accordingly, we must conclude that the very through *voir dire* proceedings undertaken in this case resulted in the fair and impartial jury to which Appellant is entitled.

The next indictment of the jury selection process concerns the fact that there were no blacks called to serve in the pool from which jury selection in this case was made. Appellant also points out that there were very few young people in the pool. The crux of his argument is not that he did not receive a fair and impartial jury, but that the jury selection pool did not constitute a random cross section of the population. This issue has previously been the subject of several opinions from this Court.

---

1. Appellant challenges the finding by the trial court that he should be prosecuted as an adult by arguing that the court's finding was against the weight of the evidence. This argument was not raised on the direct appeal of the order denying certification. See *S.A.H. v. State*, 753

P.2d 381 (Okl.Cr.1988). Accordingly, further consideration at this time is barred by principals of res judicata.

2. These include propositions III, IV, V, X, XII, XIV, XVII and XVIII.

In *Moore v. State*, 736 P.2d 161, 165 (Okl.Cr.1987), *cert. denied* 484 U.S. 873, 108 S.Ct. 212 98 L.Ed2d 163 (1987), we discussed and adopted the criteria which must be proven by a defendant in order to sustain a claim of this nature. We quoted the three proof requirements established by the Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 587 (1979) as being:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to the systematic exclusion of the group in the jury process.

*See also Fox v. State*, 779 P.2d 562 (Okl.Cr. 1989), *cert. denied* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Litteer v. State*, 783 P.2d 971 (Okl.Cr.1989).

Appellant's claim may be rejected on two grounds. First, there is not an appropriate record from which we may determine the veracity of his claim and second, because he has failed to provide any evidence that the under representation of any group, assuming one does exist, was "due to the systematic exclusion of the group in the jury process."

Following the resolution of the jury selection process, counsel for Appellant made the following objection:

> I object to the racial exposition (sic) of the entire panel, now that we have seen them and seen each individual taking a seat. I would state to the Court, it is not racially balanced from the standpoint of my—nor was it greatly balanced from the beginning. And, as such, Your Honor, I would ask for a mistrial and another panel be selected that are more racially balanced.

Tr. 222.

This argument by counsel is the only objection voiced to the composition of the jury. It appears from the context of counsel's argument that he is objecting only to the racial mix of the jurors actually chosen. In any event, there is no record before us which indicates the race or the individual ages of those comprising either the original pool or the jury selected. This absence alone is sufficient ground on which to deny the allegation. We cannot assume error from a silent record. *Carter v. State*, 595 P.2d 1352 (Okl.Cr.1979); *Reid v. State*, 478 P.2d 988 (Okl.Cr.1970). *See also Ellis v. State*, 795 P.2d 107, 109 (Okl.Cr.1990); *Hill v. State*, 745 P.2d 410, 411 (Okl.Cr.1987); *Cardenas v. State*, 695 P.2d 876, 878 (Okl.Cr.1985); *Dollar v. State*, 674 P.2d 48, 50 (Okl.Cr.1984).

Regardless of the silent record, we find that Appellant has wholly failed to satisfy the burden of proof assigned to him by *Duren*. There is no question but that blacks are a distinctive group in any community; likewise young adults. Accordingly the first factor of the *Duren* criteria is undeniably established. The same is not true, however, of the second and third prongs of the test.

There is no evidence in the record of the proportion of blacks or young adults which live in Creek County. Neither is there even a hint of confirmation that the assumed (but not proven) absence of these two classes from the jury or the jury selection pool was due to their "systematic exclusion" by the selection process itself. Appellant has not met the minimum level of proof required to justify further evaluation of his claim. In the absence of such proof, we find no error or reason to believe that the jury as selected was anything other than fair and impartial.

In propositions III, XIV and XVII, Appellant raises issues dealing with the admission of evidence during the trial. Specifically, Appellant claims that the state's psychiatrist was improperly allowed to testify concerning statements which were made in violation of his constitutional rights and that certain evidence, the pictures of the bodies and the testimony of the victims relatives, was more prejudicial than probative and should have been excluded.

■ At the outset, we recognize that evidentiary matters are largely left to the discretion of the trial court. *Rosteck v.*

*State,* 749 P.2d 556 (Okl.Cr.1988). Accordingly, our review must focus upon whether, in the face of challenge to the particular item of evidence or portion of testimony, the trial court made the appropriate decision.

■ Appellant's first allegation with regard to the admissibility of evidence concerns the testimony of Dr. Thomas Goodman, a psychiatrist called by the state during rebuttal in the first stage of the trial. Dr. Goodman examined Appellant at Eastern State Hospital in connection with the pretrial competency evaluation requested by the State. Appellant now argues that Dr. Goodman's subsequent testimony involving opinions derived from the pretrial examination should not have been allowed as substantive with regard to Appellant's sanity at the time of the offense.

Unlike the cases which Appellant cites, there is no allegation that the testimony by Dr. Goodman was allowed in violation of the Fifth Amendment. In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Stinson v. State,* 528 P.2d 735 (Okl.Cr.1974); *Noyes v. State,* 516 P.2d 1368 (Okl.Cr.1973), the question at issue involved the admission of the psychiatric testimony as substantive evidence of guilt. In those cases, where the opinion rendered involves a confession of the details of the crime to the medical professional, there is no question that any and all legal means must be taken to protect the defendant's rights against self incrimination. The situation in this case is different.

We are not concerned with testimony upon which a jury finding of future dangerousness is based as was true in *Estelle.* Instead, the evidence was offered in direct rebuttal to Appellant's evidence that he was not sane at the time of the crime. We find our resolution of this issue is guided by the Supreme Court's decision in *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

In *Buchanan,* the Court held that the dictates of *Estelle* with regard to the introduction of opinions based on information gleaned during a competency evaluation are applicable only in those cases where the mental condition is not put into issue by the accused. This case is distinctly different in that Appellant's mental status was an issue raised directly by Appellant. In fact, as was the case in *Buchanan,* the evidence as to Appellant's mental status was the only evidence presented by the defense.

Appellant filed an "Application and Notice For the Use of the Insanity Defense" on February 2, 1988. (O.R. 200). On Feb 10, the trial court granted Appellant's request for the appointment of psychiatric expert. (O.R. 215). In May, the State received the court's permission to require Appellant to submit to examination with respect to his insanity defense. The testimony at issue was generated at this examination.

In *Buchanan,* the Court recognized the inherent difficulty of applying the restrictive rules of *Estelle,* in a situation where the defendant relies on psychiatric testimony, yet seeks to prohibit the State from obtaining or using rebutting evidence. The Court noted that "[i]n such circumstances, the [State] could not respond to this defense unless it presented other psychological evidence." *Buchanan,* 483 U.S. at 423, 107 S.Ct. at 2918.

As was true in *Buchanan,* the testimony in this case was admitted solely for the purpose of rebutting Appellant's evidence of extreme emotional disturbance. Dr. Goodman did not testify about any of the criminal acts giving rise to the action against Appellant. From the record, it appears that Appellant was apparently advised of his rights in this regard and declined to discuss the details of the crime with the doctor. A violation of the Fifth Amendment may only arise when the testimony involved is based on the incriminating statements of the defendant. There is no evidence of that here, thus, there is no reason for the exclusion of the evidence.

■ In Proposition XIV and XVII, Appellant identifies evidence, photographs of the victims and testimony by their relatives, which he claims should not have been offered at trial in that it was more prejudicial than probative. At the outset, we note

that Appellant has not established the appropriate record to allow the review of the photographs. There was no request that the pictures be made a part of the record and they were not included for our review. Accordingly, we cannot comment on the effect which the pictures may have had at the trial. *Ellis v. State*, 795 P.2d 107, 109 (Okl.Cr.1990); *Hill v. State*, 745 P.2d 410, 411 (Okl.Cr.1987); *Cardenas v. State*, 695 P.2d 876, 878 (Okl.Cr.1985); *Dollar v. State*, 674 P.2d 48, 50 (Okl.Cr.1984).

■ The second evidentiary matter addressed by Appellant concerns testimony by Houghton's wife and Sanders' mother. Appellant claims that the testimony was put on purely for the purpose of creating sympathy for the victims. Appellant did not object to the testimony at trial, thus he has waived all but fundamental error. *Jones v. State*, 772 P.2d 922 (Okl.Cr.1989); *Grant v. State*, 764 P.2d 214 (Okl.Cr.1988).

While we find that the testimony of the relatives as to the identification of the victims and their belongings may have been unnecessary in light of other testimony to the same facts, at most it was merely cumulative. We do not find that fundamental error has occurred.

The final allegations with respect to the first stage of the proceedings concern the manner in which the questions of guilt were submitted to the jury. In Proposition X, Appellant claims that error occurred when the jury was not required to specify whether the guilty verdict was based on malice aforethought murder or felony murder. In connection, he also claims in Proposition V, that the possibility that he was convicted based on Felony murder makes his convictions for kidnapping and robbery a violation of the constitutional protections against double jeopardy.

■ This Court has long held that a conviction for murder may be affirmed where alternative theories are charged when the evidence supports either malice aforethought or felony murder. In *James v. State*, 637 P.2d 862, 865–66 (Okl.Cr. 1981), we held that when the alternative charges were based on the factual basis of the crime, rather than the actual nature of

the offense, a jury was not required to indicate which of the alternatives upon which the conviction was based. *See also Newsted v. State*, 720 P.2d 734, 737 (Okl. Cr.1986); *Plunkett v. State*, 719 P.2d 834, 841 (Okl.Cr.1986); *Phillips v. State*, 641 P.2d 556, 559 (Okl.Cr.1982). *See also Schad v. Arizona*, 501 U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). The verdict was proper, thus there is no error with regard to the murder conviction.

■ We must, however, reach a different conclusion with respect to the allegation that conviction for the offense of robbery constitutes double jeopardy. In *Munson v. State*, 758 P.2d 324, 332 (Okl.Cr. 1988), we considered the same allegation on almost identical facts. In that case we held:

> Nonetheless, because the jury's verdict does not specify whether appellant was found guilty of malice-aforethought murder or kidnapping murder or armed-robbery murder, the verdict must be interpreted as one of felony murder in order that appellant receive the benefit of the rule that a defendant cannot be convicted of felony-murder and the underlying felony.... To determine which felony formed the basis for felony-murder where more than one underlying felony is charged, one must look first to the information and second to the evidence. (Citations omitted).

In *Munson*, we determined that the armed robbery conviction must be dismissed in that the robbery was "the initial felony which began the chain of events leading to the victim's death." *Id.* at 333. We reversed the conviction and ordered its dismissal. We find the same result to be warranted here. The evidence at trial indicates that the events in this case which lead to the deaths of the victims arose from Appellant's desire to commit armed robbery. He robbed the victims and then decided to steal their cars. Accordingly, we find that Appellant's conviction for two counts of Robbery with Firearms must be reversed and remanded with instructions to dismiss them.

## SECOND STAGE PROCEEDINGS

■ We need only address one of the allegations made concerning errors occur-

ring in the second stage of the proceedings because that error requires that the case be remanded back to the trial court for resentencing. Appellant alleges that his rights to due process and equal protection were violated when the trial court failed to instruct the jury with respect to the potential punishment alternative, life without parole. He bases his claim on the fact that this punishment option, codified at 21 O.S. 1981, § 701.10, became law prior to his trial, although subsequent to the commission of the offenses. We find merit in the argument.

Due to the extreme nature of the penalty involved in capital murder cases, we have often discussed the need for extremely careful scrutiny of the imposition of the death sentence. See *Liles v. State*, 702 P.2d 1025, 1036 (Okl.Cr.1985). This philosophy is also demonstrated by the legislative requirement that this Court examine each and every sentence of death for any evidence that the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, and whether the evidence offered at trial supports each of the jury's findings with respect to the aggravating circumstances which support the sentence. 21 O.S.Supp.1987, § 701.13(C). In short, sentences of death must be absolutely, unquestionably fair.

Given the gravity of the death penalty, we find that principals of fundamental fairness compel us to reverse this case for a new second stage trial. As discussed in *Allen v. State*, 821 P.2d 371 (Okl.Cr.1991), we find no constitutional prohibition to the application of this possible sentencing option in cases where the penalty became law in the period while the offender awaited trial. Quite simply, we cannot justify a decision which would act as a total bar to consideration of a punishment alternative to death merely because the crime giving rise to the trial occurred a short time before the effective date of previously enacted legislation.

The circumstances involved in this decision are unique and should not be interpreted to have any broader ramifications out-side the very limited situation implicated under these facts. We will apply this analysis only in cases where the amendment adding the option of life without parole to Section 701.10 was in effect at the time of the trial. Only those cases will receive consideration of the additional sentencing possibility. In the interests of fundamental fairness, we find that justice demands the action taken by this Court under these distinctively compelling facts.

Having reviewed the allegations of error raised by Appellant, we find that the convictions for Murder, Kidnapping, Arson in the Third Degree and Larceny of an Automobile are **AFFIRMED.** The convictions for Robbery with Firearms are **REVERSED** with instructions to **DISMISS.** The death sentence returned for the Murder convictions is **VACATED** and the case is **REMANDED** for new second stage proceedings.

LUMPKIN, P.J., concurs in part/dissents in part.

JOHNSON, V.P.J., specially concurs.

CHAPEL, J., concurs.

LUMPKIN, Presiding Judge: concurring in part/dissenting in part.

I concur in this Court's determination the convictions for murder, kidnapping, arson and larceny of an automobile should be affirmed; and the convictions for robbery with firearms should be reversed. I dissent to the Court's determination the case should be remanded for resentencing, using the life-without-parole option.

This Court in its holding cites "principals [sic] of fundamental fairness" in reversing for a new second-stage trial. *Ante* at 753. This puts me in a quandary, for how does one dissent to principles of fundamental fairness? This quandary, however, shows precisely why use of this equitable principle cannot serve as the basis for a ruling of law. As was said over a century ago:

Equity is a Roguish thing: for Law we have a measure, know what to trust to, Equity is according to the Conscience of him that is Chancellor, and as that is larger or narrower, so is Equity. 'Tis all one as if they should make the Standard for the measure, we call, a Chancellor's Foot, what an uncertain measure would

this be? One Chancellor has a long Foot, another a short Foot, a third an indifferent Foot. 'Tis the same thing in the Chancellor's Conscience.

Seldon, John, *Equity Table–Talk* (Arber, Edward, ed. in *English Reprints*, nos. 1–7, London: 1869) at 46. What is "fundamental fairness" to one judge may not be "fundamental fairness" to another.

"Fairness" in the *law* as applied in the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, demands, among other things, fair notice of the nature of the prohibitive acts. *Capler v. City of Greenville, Miss.*, 298 F.Supp. 295, 298 (N.D.Miss.1969), *aff'd*, 422 F.2d 299 (5th Cir.1970). Here, Appellant received that "fairness": he knew the punishment for first degree murder at the time he committed it was either life in prison or death.

The majority cites *Allen v. State*, 821 P.2d 371 (Okl.Cr.1991) for the proposition there is no constitutional infirmity in the application of the life-without-parole option to a murder which occurred before that punishment option went into effect. *Allen* is discussed more fully below. But first, I will show jurisprudence covering nearly nine decades proves the majority of this Court is simply wrong, both here and in its previous analysis.

Our most recent decision dealing with the subject of retroactive application of punishment is *Bowman v. State*, 789 P.2d 631 (Okl.Cr.1990). In *Bowman*, we stated with clarity that "the appropriate criminal penalty is the penalty in effect at the time the defendant commits the crime." *Id.* at 631 (citing *Penn v. State*, 13 Okl.Cr. 367, 164 P. 992 (1917) and *Alberty v. State* 10 Okl.Cr. 616, 140 P. 1025 (1914)). Federal courts repeatedly apply this basic principle of law. In *United States v. Towne*, 870 F.2d 880 (2d Cir.1989), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989), the Second Circuit found that the repeal of a statute prior to the defendant's being sentenced was inapposite because the statute was in effect at the time the underlying offenses were committed and at the time the defendant was convicted. *Id.* at 887. *See also Burge v. Butler*, 867 F.2d 247, 250 (5th Cir.1989).

In addition, a review of our jurisprudence reveals this principle was part of the legal foundation laid at statehood. One of the first cases was *Sharp v. State*, 3 Okl.Cr. 24, 104 P. 71 (1909). The defendant there committed an offense while Indian Territory was governed by the laws of the state of Arkansas. The defendant did not go to trial until after Oklahoma had become a state and enacted its statutes. The question before the Court was whether the laws of Arkansas or Oklahoma should be applied. The Court determined that application of the laws of the state of Oklahoma would seriously harm the defendant and the only choice was to use the laws which controlled at the time of the offense. Relying on a United States Supreme Court case, *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), the Oklahoma Court stated: "[t]he accused should be tried and dealt with under the law as it existed at the time of the commission of the crime of which he stands charged." *Sharp*, 3 Okl.Cr. at 31, 104 P. at 74. The Court reiterated this principle in *Bowman* when it determined that the sentence of ten years to life was proper because "[i]t is a well established rule of law that the appropriate criminal penalty is the penalty in effect at the time the defendant commits the crime." *Bowman*, 789 P.2d at 631. *See also Freshour v. Turner*, 496 P.2d 389, 392 (Okl.Cr.1972) (defendant, seventeen at time of offense, not entitled to benefit of a subsequently enacted bill which defined the term "child" as any person under the age of eighteen; because language in the enactment did not show it was to be applied retroactively, the law may be applied prospectively only); *Jones v. State*, 3 Okl.Cr. 593, 107 P. 738 (1910). The irony of the Court's attempt to apply "fairness" in this case is revealed by our decision in *Costa v. State*, 753 P.2d 393 (Okl.Cr.1986). In that case, the trial judge sentenced the defendant to life without parole, which was not a sentencing option at the time of the crime. Finding that the trial judge committed error with sentencing, this Court did not remand for sentencing, but struck the "without parole" portion of the sentence and remanded for the trial court to correct the error. *Id.* at 395.

Legal nuances of this type lead to an anomaly of the law. The anomaly then skews the principles of law which are to be applied and creates serious cracks in the foundation of our jurisprudence. In addition, it denigrates the principle that this is a nation of laws, and not of men.

This Court, in its analysis, alludes to the observation that "death is different." While the final nature of the death penalty may result in a more microscopic review of the facts of a case, it does not change basic principles of the application of a rule of law, or the manner of consistently applying the law. The basis of the United States Supreme Court's overturning the application of the death penalty in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), was there must be a consistent application of the law, and that the vague, arbitrary applications of the penalty be removed. That concept of consistency in the application of legal principles must be applied fairly to all aspects of the review in a criminal case, whether it applies to the State or a defendant. For the Court to do otherwise creates aberrations in the law which impede the orderly, consistent application of that law in the trial courts of this State.

The actions of the Court in this case, pursuant to some type of "fairness" review, disregard the facts of the case. The Appellant neither objected to the instructions given nor requested an instruction on this optional punishment. This Court should never take the position of trying to reinvent the trial strategy of an appellant's attorney in a trial. Trial judges are vested with a dual role of being fair and applying the law under the appropriate circumstance. The role of an appellate judge is to apply the law consistently and to ensure the rules of law are set forth to enable trial practitioners and trial judges to rely on those principles of law in the trial of cases. While procedural aspects may be declared to be applicable retroactively, pursuant to 22 O.S.1991, § 3, substantive amendments of the penal statute cannot. The procedure for conducting a resentencing proceeding is substantially different than an application of the penal provisions of the statutes based on when the crime was committed.

The Court's analysis of a substantive provision skews the rules which apply to the retroactive effect of procedural matters.

It is in this vein that *Allen v. State*, 821 P.2d 371 (Okl.Cr.1991) was incorrectly decided. For whatever reason, this Court allowed itself to get sidetracked on an *ex post facto* question. Every second-year law student knows, when dealing with an *ex post facto* application, we by definition of the term necessarily *assume* the statute in question is intended to be applied retroactively. I fear the Court has confused two entirely different principles of law. The question here, and the core of this dissent, is not whether it is *constitutionally permissible* to apply a law retroactively, but whether the law *was meant to* be applied retroactively *at all.*

This above discussion and *stare decisis* clearly show that assumption makes *Allen* intellectually infirm. But even if this Court decides to throw out the combined jurisprudence of this Court since Statehood on the issue, it cannot overlook its own ruling in *Wade v. State*, 825 P.2d 1357, 1363 (Okl.Cr.1992), which held the option of life without parole would not be available if it were not requested by the defendant at trial. Here, the option was not requested; yet this Court would reverse the sentence despite its own more recent case.

Before *Allen* the law was clear: the punishment to be applied was the one in effect at the time the crime was committed. *Allen* created confusion where before there was none. *Wade* nurtured that confusion. But through the fog, a trial court could at least count on one thing: if the option were requested, it would be given; if not, it would not be error on appeal. Now this Court seeks to throw out even that murky pronouncement. Confusion and inconsistency make poor bedfellows—especially in a capital murder case, which will be litigated for years to come.

"Principles of fundamental fairness" is an easy solution to the problem this Court has created by ignoring its own caselaw in determining "death is different." And as with many easy solutions, it is neat, plausible—and wrong. I cannot agree the doctrines of this Court are to be changed with

every succeeding judge, and cannot join in an opinion that in some vague rush to "fairness" varies the law to be applied in such a manner that it is no more consistent than a Chancellor's foot.

I respectfully dissent.

JOHNSON, Vice Presiding Judge, specially concurring.

I concur specially with the majority herein. See my Special Concurrance in *Salazar v. State of Oklahoma*, 852 P.2d 729.

### ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE

NOW on this 14th day of September, 1993, having examined the Petition for Rehearing in the above styled and numbered cause, and being fully advised in the premises, this Court finds that it should be, and the same hereby is DENIED. The reasons raised by the State as justification for the present petition were addressed in detail in *Salazar v. State*, 852 P.2d 729 (Okl.Cr. 1993). The Clerk of this Court is directed to issue the mandate forthwith.

IT IS SO ORDERED.

/s/Gary L. Lumpkin
GARY L. LUMPKIN, Presiding Judge
/s/Charles A. Johnson
CHARLES A. JOHNSON, Vice Presiding Judge
/s/James F. Lane
JAMES F. LANE, Judge
/s/Charles S. Chapel
CHARLES S. CHAPEL, Judge
/s/Reta M. Strubhar
RETA M. STRUBHAR, Judge